613 A.2d 143

**TOOL SALES & SERVICE CO., INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

**TOM MISTICK & SONS, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1992.

Decided July 22, 1992.

390

Keithley D. Mulvihill, for petitioners.

Kevin A. Moury, Deputy Atty. Gen., for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

Tool Sales and Service Company, Inc. and Tom Mistick and Sons, Inc. (collectively Taxpayers) appeal orders entered by

the Board of Finance and Revenue (Board) that disallowed a deduction ·representing hypothetical federal tax liability in calculation of Taxpayers' capital stock value for tax purposes in the years 1984 and 1985. We affirm.

The parties have stipulated to the following facts. Taxpayers qualify for S corporation treatment under federal and state tax laws.[1] During the years in question, Taxpayers were S corporations for both state and federal purposes. Although not subject to state or federal income tax because of their S corporation status, Taxpayers are subject to tax on the value of their capital stock.

■ One of the elements used to calculate a taxpayer's capital stock tax liability is net income per books. For the tax years 1984 and 1985, in the course of calculating capital stock tax liability, Taxpayers deducted federal taxes from the figures used as net income per books. Subsequently, the Department of Revenue (Department) recalculated Taxpayers' capital stock tax liability without taking the deduction for federal taxes into account. Taxpayer Tom Mistick and Sons, Inc.'s liability was increased from $48,144 to $61,040. Taxpayer Tool Sales & Service Company, Inc.'s liability was increased from $8,087 to $11,254. Taxpayers appealed to the Board, which upheld the Department in two orders both dated April 25, 1989.

The fixed formula for determining capital stock value is found in Section 601 of the Tax Reform Code, Act of December 23, 1983, P.L. 360, 72 P.S. § 7601. Prior to 1983, Section 601 provided for calculation of capital stock value based upon an examination of various components of the business, including actual profits or earnings. In these prior years, it was the practice of the Department to allow both C corporations and S corporations to take a deduction for federal tax when comput-

---

1. Both the state and the federal government have enacted provisions that allow taxable income for qualifying small corporations, known as S corporations, to be reported and paid on the tax returns of the individual shareholders. See 26 U.S.C. § 1361 *et seq.;* also Act of March 4, 1971, P.L. 6, 72 P.S. §§ 7307–7307.12. Corporations that do not make this election are commonly referred to as C corporations.

ing average net income for capital stock tax purposes.[2] However, in 1983, Section 601 was amended by the General Assembly to provide a fixed formula for determining capital stock value. The fixed formula is dependent on a number of factors, a critical one being average net income. The amended Section 601 defines average net income as follows:

> The sum of the net incomes or loss for each of the current and immediately preceding four years, divided by five. If the entity has not been in existence for a period of five years, the average net income shall be the average net income for the number of years the entity has actually been in existence.... *The net income or loss of the entity for any taxable year shall be the amount set forth as income per books on the income tax return filed by the entity with the Federal government for such taxable year, or if no such return is made, as would have been set forth had such a return been made....* (Emphasis added.)

When the amendment was enacted, the Department adopted a policy for the years controlled by the newly amended Section 601. S corporations were no longer entitled to a deduction for federal income tax, as in reality only C corporations were required to pay the federal tax. In 1987, the Department codified its policy at 61 Pa.Code § 155.26(g) as follows:

> No adjustment to net income or loss may be made for Federal income tax which would have been paid by a corporation electing S Corporation treatment under Section 1361 of the IRC (26 U.S.C.A. § 1361) or for Commonwealth Corporate Net Income Tax which would have been paid by a corporation electing Pennsylvania S corporation treatment under article 3 of the IRC (72 P.S. §§ 7301–7361), or for Commonwealth personal income tax paid by the shareholders of the corporation.

The Department's regulation did not become effective until January 17, 1987, subsequent to the tax years at issue. However, the Department states, and Taxpayers do not contest, that the regulation is an enactment of the Department's

2. The parties agree that this policy is not mandated by the statute.

previously established interpretation of Section 601, and that since the enactment of Section 601, which became effective for tax years beginning on or after January 1, 1984, the Department has uniformly not allowed the deduction of hypothetical income taxes by S corporations in the calculation of net income per books.

First, Taxpayers contend that the Department's refusal to allow an S corporation the same deductions for federal income tax allowed C corporations, who actually pay the tax, contradicts the express terms of Section 601, usurps legislative authority, and amounts to unauthorized legislation. Secondly, Taxpayers allege that the Department's regulation results in a different tax base for taxpayers who are similarly situated, which, they argue, is a violation of Article 8, Section 1 of the Pennsylvania Constitution, the Equal Protection Clause of the United States Constitution, and Article 3, Section 32 of the Pennsylvania Constitution (prohibiting special laws), and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. Taxpayers concede that except for the disallowance of the deduction for federal income tax, the Department's calculation of their net income is correct.

When interpreting a statute, this Court must ascertain and effectuate the intent of the General Assembly, and our legislators are presumed not to have intended a result that is absurd or unreasonable. *Doyle Equipment Company v. Commonwealth*, 117 Pa.Commonwealth Ct. 38, 542 A.2d 644 (1988). Any resolution of the issue before us hinges on an interpretation of the phrase "income per books" in Section 601's definition of "average net income." A problem arises in ascertaining legislative intent with regard to the "income per books" of an S corporation. Although an entity's average net income is defined with reference to a particular section of the entity's federal tax return, and S corporations are defined as entities for the purposes of Section 601, the federal tax form for an S corporation for the years in question did not include a line entry titled "income per books." Consequently, the federal tax returns filed by the Taxpayers for the pertinent years do not include a line entry for "income per books."

Federal Tax Form 1120, which is the C corporation income tax return, contains Schedule M–1, a section designed for reconciliation of income per books with income per return. Line 1 of Schedule M–1 is reserved for the C corporation's calculation of "Net income per books." In 1984 and 1985, the S corporation return did not contain such a line.[3] Since "income per books" is not reported on the S corporation's federal tax return for the years 1984 and 1985, Taxpayers' propose that it be determined hypothetically, based upon what an S corporation would have reported as income per books, just like a C corporation: in other words, as if it had to pay taxes. Taxpayers argue that the Department's regulation equates "net income per books" with the amount listed as ordinary income on the S Corporation's tax return, which, they claim, is an arbitrary decision not supported by the statute.

The Department contends that its regulation does not contradict the terms of the statute. The Department also states that any deduction of a hypothetical federal income tax when calculating net income is unauthorized by any generally accepted accounting principles. This characterization of the issue overlooks the obvious question raised by Taxpayers, which is, what did the General Assembly intend when it defined net income as "the amount set forth as income per books on the income tax return filed by the entity with the Federal government"?

The words of this statute are not precise because they actually do not refer to a clearly discernable and reported figure on the income tax return of all entities subject to the capital stock franchise tax. When confronted by such legislation, the intention of the legislature must be ascertained by considering, among other matters, the object to be attained. 1 Pa.C.S. § 1921(c). Here it is apparent that the General Assembly intended entities subject to the capital stock franchise tax to determine income according to what the federal law recognized as net income per books.

3. Schedule M–1 first appeared on the S corporation return, Form 1120S, in 1990. The Department recognizes that "income per books," which is the term appearing in the statute, refers to "net income per books."

Internal Revenue Regulation (IRR) 1.56–1, 26 C.F.R. 1.56–1 (1991), deals with adjustments for the book income of corporations.[4] IRR 1.56–1(b)(2)(i) defines net book income as the income or loss for a taxpayer reported in the taxpayer's applicable financial statement. IRR 1.56–1(c)(1) provides that the applicable financial statement of a corporation is a statement required to be filed with the Securities and Exchange Commission, a certified audit statement used for a substantial non-tax purpose, a financial statement provided to a government regulator or a financial statement that is not a certified audit but is used for a substantial non-tax purpose. If a corporation does not have a financial statement available for the year that satisfies one of the previous definitions, the net book income is considered equivalent to current earnings and profits. IRR 1–56.1(c)(1)(vi), 26 C.F.R. 1–56.1(c)(1)(vi). If the only financial statement that a corporation has for the year in question is a financial statement that is not a certified audit but is used for a substantial non-tax purpose, the corporation may elect to treat net book income as equal to current earnings and profits. IRR 1–56.1(c)(1)(v), 26 C.F.R. 1–56.-1(c)(1)(v).

From this examination of the federal approach to determining net income per books, we conclude that the intention of the General Assembly when enacting the definition of average net income in Section 601 was to direct the use of a figure for income that is set forth in the corporation's financial statements that are not used for tax purposes. Although Taxpayers attack the Department's policy and the regulation codifying that policy, they do not claim that the Department's estimation of their average net income deviates from the calculations of income expressed in their own financial records. Just as there is no specific denial of a hypothetical federal income tax deduction for S corporations in Section 601, there is no specific legislative authorization for one. The policy change effected by the Department was concurrent with the

4. We note that by its terms, IRR 1.56–1 does not apply to S corporations, which were not reporting reconciliations of net income per books with taxable income to the Internal Revenue Service on August 17, 1990, when the regulation went into effect.

legislative amendments to the tax laws regarding the calculation of capital stock value and the corporate net income laws regarding the taxation of S corporations. We believe that Taxpayers have not carried their burden of showing that the Department's regulation does not comport with the law it is designed to enforce.

■ Taxpayers' claim of unequal treatment under the law is likewise unconvincing, as is their claim for attorney's fees under 42 U.S.C. § 1983. Taxpayers allege that the Department is treating similarly situated taxpayers differently, but the truth is that S corporations and C corporations are not similarly situated. When a corporation elects to be an S corporation, it does so freely, and knowingly chooses to distinguish itself from a C corporation. By such election the S corporation enjoys the financial benefit of avoiding federal tax liability. The Department's regulation simply reflects this very real difference.

■ Taxpayers' claim that the Department's action is in violation of Article 3, Section 32 of the Pennsylvania Constitution. Article 3, Section 32 prohibits the General Assembly from passing a local or special law in any case that has been or can be provided for by general law, and specifically prohibits the General Assembly from making local or special laws exempting certain property from taxation, along with other specific prohibitions. Section 601, as passed by the General Assembly, applies equally and across the board to C and S corporations, partnerships and various other entities. Taxpayers' allegation that this is a special law is rejected.

The decision of the Board is affirmed.

## ORDER

AND NOW, this 22nd day of July, 1992, unless exceptions are filed within thirty (30) days of the date hereof, the Chief Clerk is directed to enter judgment in favor of the Commonwealth and against Petitioner Tool Sales and Service Co., Inc., in the amount of $3,167, and in favor of the Commonwealth

and against Petitioner Tom Mistick & Sons, Inc., in the amount of $12,896.