**SHAWNEE DEVELOPMENT, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent. (Two Cases)**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1999.

Decided Dec. 18, 2000.

As Amended Dec. 19, 2000.

Philip E. Cook, Jr., Pittsburgh, for petitioner.

Christopher M. Kazmaier, Harrisburg, for respondent.

Before SMITH, Judge, FLAHERTY, Judge and NARICK, Senior Judge.

FLAHERTY, Judge.

These matters are on Petitions for Review of two Orders of the Board of Finance and Revenue (the Board). The Board affirmed the Department of Revenue's (Department) recalculation of the Capital Stock Tax (Tax) liability of Shawnee Development, Inc., (Petitioner) for fiscal years ending March 31, 1994, and March 31, 1995. The Department calculated Petitioner's Tax liability to include certain debt forgiveness. We reverse.

Petitioner, a Pennsylvania corporation, is engaged in the business of selling and developing real property in this Commonwealth. Petitioner defaulted on its obligations to financial institutions as a result of a depression in the real estate market. Petitioner then began a debt restructuring process which resulted in the settlement of its debt obligations at a discount. In other words, Petitioner's debts, totaling Thirty-eight million, thirty-eight thousand five hundred ninety-five dollars ($38,038,-595.00) over a four-year period, from April 1, 1991, to March 31, 1995, were forgiven. Pursuant to a joint Stipulation of Facts, the forgiven debt was not considered as income for the purposes of either federal income taxation or for Pennsylvania corporate net income taxation. Prior to the debt forgiveness, Petitioner was insolvent, and after forgiveness of the debt, Petitioner still remained insolvent. For the purpose of valuation of capital stock, Petitioner's net income and its net worth were determined to be zero for this four-year period. *See* Section 601(a) of the Tax Reform Code of 1971 (Act), Act of March 4, 1971, P.L. 6, No. 2, *as amended,* 72 P.S. § 7601(a), and Sections 155.26 and 155.27 of the Department Regulations (Regula-

tions), 61 Pa.Code §§ 155.26 and 155.27. When Petitioner filed its annual Tax Reports for the years 1991 to 1995, it excluded this forgiveness of indebtedness from the calculation of its book income. With respect to the fiscal year ending March 31, 1995, the Department recalculated the value of Petitioner's Capital Stock from Zero to Five million four hundred twenty-eight thousand six hundred thirty-five dollars ($5,428,635.00).[1] This recalculation resulted in an increased tax liability from the minimum Three hundred dollar ($300.00) figure to Sixty-nine thousand two hundred fifteen dollars ($69,215.00).[2] From the Department's determinations, Petitioner filed an appeal to the Board of Appeals which affirmed. The Board also affirmed, and this appeal followed.

■ One of the issues before us is whether the Act and the accompanying Regulations of the Department require the inclusion of cancellation of indebtedness in income per book for the purpose of determining the Tax liability of a taxpayer who is insolvent both before and after the forgiveness of indebtedness. Petitioner also challenges the constitutionality of the Act on due process and equal protection grounds under both the United States and the Pennsylvania Constitutions. It also contends that the Act violates the Uniformity Clause of the Pennsylvania Constitution and requests attorneys' fees as a result of the alleged constitutional violations.[3]

■ Section 601(a) of the Act defines "Average net income", one of the components used in the valuation of capital stock for tax purposes, in pertinent part, as follows:

1. Petitioner also challenges the Department's recalculation for the fiscal year ending March 31, 1994, even though the Department ultimately adjusted the value of the Capital Stock to Zero with the concomitant minimum tax liability of Three hundred Dollars ($300.00).

2. *See* Section 602 of the Act, *as amended,* 72 P.S. § 7602.

3. In appeals from decisions of the Board, we have the broadest scope of review because the Commonwealth Court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Unisys Corporation v. Commonwealth,* 726 A.2d 1096 (Pa. Cmwlth.1999).

'Average net income.' The sum of the net income or *loss* for each of the current and immediately preceding four years, divided by five.... The net income or *loss* of the entity for any taxable year shall be the amount set forth as *income per books* on the *income tax return filed* by the entity *with the Federal Government* for such taxable year....

72 P.S. § 7601(a). (Emphases supplied). *See also* Section 155.26(a), (b) of the Regulations, 61 Pa.Code § 155.26(a), (b). Section 601(a) also defines "Net worth", another component used in the valuation of capital stock for tax purposes, in relevant part, as follows:

'Net worth.'

(1) Net worth shall be the sum of the entity's issued and outstanding capital stock, surplus and undivided profits as *per books* set forth for the close of such tax year on the *income tax return filed* by the entity *with the Federal Government*....

72 P.S. § 7601(a). (Emphases supplied). *See also* Section 155.27(a) of the Regulations, 61 Pa.Code § 155.27(a). Petitioner contends that the phrase "income per books" is not defined in the Act or in its accompanying Regulations. Additionally, neither the Act nor the Regulations provides for the situation of a taxpayer who is insolvent both before and after debt forgiveness as is Petitioner here.

In *Tool Sales & Service v. Commonwealth of Pennsylvania Board of Finance and Revenue*, 536 Pa. 10, 637 A.2d 607 (1993), our Supreme Court was called upon to interpret the phrase "income per books" as applied to "S" corporations. There, Regulation Section 155.26(g), 61 Pa.Code § 155.26(g), prohibited an adjustment to net income or loss with respect to the amount an "S" corporation would pay in Commonwealth Corporate Income and Commonwealth Personal Income taxes if it were subject to federal income taxes. The Court left open the question of the applicability of federal tax law to Commonwealth tax law. It opted, instead, for a statutory construction analysis. Section 155.22, a Regulation applicable for taxable years prior to 1984, defined "book income" as "[i]ncome ... reported in Line 1 of Schedule M–1 of the Federal 1120 form". 61 Pa.Code § 155.22. This Regulation had allowed the adjustment. The Court concluded that the term "income per books", as defined by Section 155.22, had not acquired a "peculiar and appropriate meaning" which must be applied despite the existence of the new Regulation which prohibited any adjustment to net income or loss for federal income, Corporate Net Income or Commonwealth Personal Income taxation. *See* Section 1903 of the Statutory Construction Act of 1972(SCA), 1 Pa. C.S. § 1903. The Court did determine, however, that the term "income per books", as set forth in Section 601 of the Act, was ambiguous. After rejecting several other Canons of statutory construction, the Supreme Court concluded that Section 1921(a)(8) of the SCA governed in the interpretation of the phrase "income per books". This section allows for the consideration of "[l]egislative and administrative interpretations of such statute" when the statutory language is deemed to be ambiguous. 1 Pa.C.S. § 1921(c)(8). The Court held that the "Department of Revenue Regulations interpreting the Tax Reform Code will not be disregarded by this court unless clearly inconsistent with the code...." 536 Pa. at 22, 637 A.2d at 613, (*quoting SmithKline v. Beckman Corp. v. Commonwealth*, 85 Pa.Cmwlth. 437, 482 A.2d 1344, 1353 (1984)). The Supreme Court then concluded that Tool Sales had failed in its burden of proving that the term "income per books", as defined in Regulation Section 155.22, had acquired such a peculiar and appropriate meaning so as to override the language of Regulation Section 155.26(g). It also held that Tool Sales had failed to demonstrate that Regulation Section 155.26(g) was clearly erroneous in that it conflicted with

the law which it was promulgated to enforce, i.e., Section 601 of the Act.

*Tool Sales* is inapplicable, however, because no statute or regulation specifically addresses the matter here before us of an insolvent, debt-forgiven taxpayer who is subject to the Tax.[4] The Department points to Section 155.26(h) of its Regulations, which allows "[n]o *adjustment* to net income or loss…on account of nonrecurring or extraordinary items." 61 Pa.Code § 155.26(h). (Emphasis supplied). It argues that this Regulation, coupled with Regulation Section 155.22, addresses the issue at hand. Thus, the Department characterizes the concept of debt forgiveness as a nonrecurring or extraordinary item, which is not excludable from the Tax. This novel interpretation urged upon us by the Department is interesting, albeit irrelevant. Instead, we turn to Section 1903(a) of the SCA, 1 Pa.C.S. § 1903(a). This provision states, in pertinent part:

§ 1903. **Words and phrases**

(a) [T]echnical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning or definition.

We conclude that the "peculiar and appropriate meaning" which the term "income per books" has acquired is grounded in Federal income tax law. Section 61 of the Internal Revenue Code of 1954 (the I.R.C.) states, in relevant part:

§ 61. **Gross Income defined**.

(a) **General definition**. Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including ... the following items:

\* \* \*

(12) Income from discharge of indebtedness. . . .

(b) **Cross references** . . . . For items specifically excluded from gross income, see part III (sec. 101 and following).

I.R.C. § 61. Section 108 of the I.R.C. sets forth the following relevant language:

§ 108. **Income from discharge of indebtedness**.

(a) Exclusion from gross income. Gross income does *not* include any amount which (but for this subsection) would be includible in gross income by *reason of the discharge (in whole or in part) of indebtedness* of the taxpayer if—

\* \* \*

(B) *the discharge occurs when the taxpayer is insolvent*

\* \* \*

(3) Insolvency exclusion limited to amount of insolvency. In the case of a discharge to which paragraph (1)(B) applies, the amount excluded under paragraph (1)(B) shall not exceed the amount by which the taxpayer is insolvent.

\* \* \*

(d) Meaning of terms; special rules relating to certain provisions.

(1) Indebtedness of taxpayer. For purposes of this section, the term 'indebtedness of the taxpayer' means any indebtedness—

(A) for which the taxpayer is liable, or

(B) subject to which the taxpayer holds property.

\* \* \*

(2) Insolvent. For purposes of this section, the term *'insolvent' means the excess of liabilities over the fair market value of assets*. With respect to any discharge, whether or not the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, shall be determined on the basis of the taxpayer's assets and

**4.** Additionally, Petitioner is not an "S" Corporation.

liabilities immediately before the discharge.

I.R.C. § 108. (Emphases supplied). Petitioner argues that even after debt forgiveness, it still remains insolvent. The Department does not question Petitioner's insolvency status, but maintains, nevertheless, that the amount of this forgiveness is subject to valuation for the purpose of assessing the Tax. We do not agree. The foregoing provisions of the I.R.C. exclude the income of a debt-forgiven, yet still insolvent, taxpayer for the purposes of federal taxation. In the absence of guidance from our own Legislature, we apply the foregoing provisions to exclude Petitioner's debt forgiveness from liability for the Tax at hand by reason of Petitioner's after-forgiveness insolvency.[5] Consequently, we reverse the Orders of the Board.[6]

### ORDER

AND NOW, this 18th day of December, 2000, the Orders of the Board of Finance and Review recalculating the Capital Stock Tax liability of the Petitioner for fiscal years ending March 31, 1994, and March 31, 1995, are hereby REVERSED. Judgment for Petitioner shall be entered unless Exceptions are filed within thirty (30) days of this Order pursuant to Pa.R.A.P. 1571(i).

---

**5.** Since we have concluded that Petitioner's debt forgiveness is *excluded* from the Tax, Regulation Section 155.26(h) has no application in any event, since it focuses upon the matter of disallowance of an *adjustment*.

**6.** In light of our disposition, we need not address Petitioner's constitutional or attorneys' fees claims.