**SHAWNEE DEVELOPMENT, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**Shawnee Development, Inc., Petitioner,**

v.

**Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2001.

Decided May 15, 2002.

amend improvidently filed notice of appeal pursuant to Pa. R.A.P. 1503, both cases are inapplicable.

Philip E. Cook, Jr., Pittsburgh, for petitioner.

Christopher M. Kazmaier, Harrisburg, for respondent.

James Leland Fritz, Harrisburg, for Pa. Chamber of Business and Industry, Amicus Curiae.

BEFORE: DOYLE, Senior Judge (P.)[1], COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge,[2] and LEADBETTER, Judge.

OPINION BY Judge SMITH–RIBNER.

The Commonwealth of Pennsylvania has filed exceptions to the decision of a panel of this Court on these consolidated petitions for review from orders of the Board of Finance and Revenue (Board) that affirmed the recalculation by the Department of Revenue (Department) of the capital stock tax liability of Shawnee Development, Inc. (Shawnee). Applying Section 1903(a) of the Statutory Construc-tion Act of 1972, 1 Pa.C.S. § 1903(a), the panel concluded that the term "income per books" as applied in reference to a non-"S" corporation had acquired a peculiar and appropriate meaning derived from federal tax law.[3] The panel further concluded that because Shawnee remained insolvent after substantial debt forgiveness the Department erred by regarding the amount forgiven as income per books in calculating the capital stock value and reversed. *Shawnee Development, Inc. v. Commonwealth,* 764 A.2d 659 (Pa.Cmwlth. 2000), *exceptions filed* (Pa.Cmwlth., January 12, 2001) (Nos. 871 F.R.1996 and 925 F.R.1998).

The Commonwealth questions whether the term "income per books" for Pennsylvania capital stock tax purposes properly includes debt forgiveness, when it is included under Generally Accepted Accounting Principles (GAAP) and when Shawnee consistently has included it in "net income per books" on its federal income tax returns. The Commonwealth also questions whether the Court's panel erred when it incorporated and applied federal income tax law to Pennsylvania's capital stock tax law to exclude debt forgiveness from "income per books" and "average net income" under the fixed formula for capital stock value.

I

Shawnee is a Pennsylvania corporation involved in the business of selling and developing real property in the Commonwealth, and it is subject to the Pennsylva-

1. The decision in this case was reached prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. The decision in this case was reached prior to the date when Judge Kelley assumed the status of senior judge on January 1, 2002.

3. Section 61(a)(12) of the Internal Revenue Code of 1986, 26 U.S.C. § 61(a)(12), includes in the definition of "gross income" "[i]ncome from discharge of indebtedness," but Section 108(a)(1)(B), 26 U.S.C. § 108(a)(1)(B), excludes discharge of indebtedness from gross income if "the discharge occurs when the debtor is insolvent...."

nia capital stock tax. Shawnee was forced to restructure its operations as a result of a downturn in the real estate market. Fifteen financial institutions and other secured lenders agreed to cancellation of indebtedness totaling $38,038,595 over the four-year period beginning April 1, 1991 and ending March 31, 1995. Shawnee was insolvent as defined under Section 108(d)(3) of the Internal Revenue Code of 1986, 26 U.S.C. § 108(d)(3), i.e., its liabilities exceeded the fair market value of its assets, at all relevant times, even after the cancellation of indebtedness. The cancellation of indebtedness was not considered income for federal income tax or Pennsylvania corporate net income tax purposes, and Shawnee did not include it in computing its capital stock tax.

The tax base of the capital stock tax is "capital stock value," which is defined by Section 601(a) of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7601(a), in a fixed formula that has two components: "average net income" and "net worth." [4] The parties agree as to net worth, and the present case concerns only the proper treatment of average net income. Section 601(a) defines average net income in part as follows:

The sum of the net income or loss for each of the current and immediately preceding four years, divided by five.... In computing average net income, losses shall be entered as computed, but in no case shall average net income be less than zero. The net income or loss of the entity for any taxable year shall be the amount set forth as income per books on the income tax return filed by the entity with the Federal Government for such taxable year, or if no such return is made, as would have been set forth had such a return been made, subject, however, in either case to any correction thereof, for fraud, evasion or error.

For the tax year ending March 31, 1995, after adjustments by the Department, Shawnee's average net income was increased from 0 as reported to $1,041,358; its capital stock value was increased from 0 to $5,428,635; and its capital stock tax was increased from the reported $300 to $69,215. Shawnee appealed from the determination for that year and the previous year, and the Board refused relief and approved the Department's actions, with noted dissents in both cases by the designees for the State Treasurer and the Auditor General. The parties agree that the central issue is whether cancellation of indebtedness for the periods ending March 31, 1992, March 31, 1993, March 31, 1994 and March 31, 1995 must be included in "income per books" for Pennsylvania capital stock tax purposes.[5]

## II

■ The Commonwealth first quotes the definition of capital stock value from

---

4. Section 601(a) defined "Capital stock value" for the year ending March 31, 1994 as:

The amount computed pursuant to the following formula: the product of one-half times the sum of the average net income capitalized at the rate of nine and one-half per cent plus seventy-five per cent of net worth, from which product shall be subtracted fifty thousand dollars ($50,000), the algebraic equivalent of which is

$$(.5 \times (\text{average net income}/.095 + (.75) \text{ net worth})) - \$50,000$$

The section was amended to provide for subtraction of $75,000 for the period including the year ending March 31, 1995, and the current figure is $125,000.

5. The Court's review of a decision of the Board is governed by Pa. R.A.P. 1571. Although the Court hears such appeals in its appellate jurisdiction, it functions essentially as a trial court under that Rule. *Brown v. Commonwealth,* 670 A.2d 1222 (Pa.Cmwlth. 1996).

Section 601(a) of the Tax Reform Code, with its mathematical formula, and the definition of average net income, with its reference to "the amount set forth as income per books on the income tax return filed by the entity with the Federal Government for such taxable year. . . ." The Commonwealth notes that the U.S. Corporation Income Tax Return, Form 1120, includes a Schedule M-1, "Reconciliation of Income (Loss) per Books With Income per Return." Line 1 of Schedule M-1 is "Net income (loss) per books." The Commonwealth states that this is the amount referred to in the definition of capital stock value and points out that that is the only entry on the federal income tax return that could possibly reflect book net income as contemplated by the statute. The Commonwealth asserts that Shawnee consistently has included debt forgiveness income on its Schedule M-1, Line 1 of Form 1120. Further, GAAP require that extraordinary items be included in book net income on the income statement, in accordance with the current all-inclusive approach to net income embodied in GAAP. Forgiven debt is an extraordinary item of income.

■ Also, the Department's regulation at 61 Pa.Code § 155.26(h) provides: "No adjustment to net income or loss may be permitted on account of non-recurring or extraordinary items." The Commonwealth characterizes this as an interpretation within its broad grant of power to interpret and enforce the Tax Reform Code. It notes that in reviewing technically complex statutory schemes, a court must be even more chary to substitute its discretion for the expertise of the administrative agency. *SmithKline Beckman Corp. v. Commonwealth*, 85 Pa.Cmwlth. 437, 482 A.2d 1344 (1984), *aff'd per curiam*, 508 Pa. 359, 498 A.2d 374 (1985). The Commonwealth asserts that the enactment of the fixed formula for determining capital stock value represented a radical change from the former method of determining "actual value" based on a totality of the circumstances approach. In addition, the Commonwealth argues that each time Shawnee had a debt forgiven it realized a financial benefit in that it became less insolvent than it was before the restructuring transaction.

Under a separate heading the Commonwealth contends that the panel of this Court erred in concluding that "income per books" is ambiguous in this case and erred in applying federal income tax law to the Pennsylvania capital stock tax. It also contends that the panel erred by citing *Tool Sales & Service Co., Inc. v. Commonwealth*, 536 Pa. 10, 637 A.2d 607 (1993), for the proposition that the phrase is ambiguous because *Tool Sales* concerned the 1984 and 1985 capital stock tax of an S corporation. There the ambiguity stemmed from the fact that before 1990 the tax return form for such a corporation, Form 1120S, did not include a line entry similar to "Net income (loss) per books" of Form 1120, Schedule M-1, Line 1, and the Supreme Court limited its holding to those narrow circumstances. The Commonwealth argues that income per books, average net income and capital stock tax have nothing to do with federal income tax law. Moreover, the legislature is well aware of the concept of federal "taxable income," and the capital stock tax does not use that term. The Commonwealth asserts that taxpayer insolvency has no relevance to the application of yearly net income per books to determine the average net income component of the fixed formula, and the panel erred in applying Sections 61 and 108 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 61 and 108, because those provisions deal with determining taxable income for federal income tax purposes.

Shawnee in response notes that it is well settled that a capital stock value tax is a property tax on the assets of a corporation as represented by its shares of stock and not a tax on the income of the corporation. *Commonwealth v. Philadelphia Market Street Subway–Elevated Railway Co.*, 408 Pa. 357, 184 A.2d 483 (1962). Shawnee notes that the term "income per books" is not defined in Section 601(a) of the Tax Reform Code or in regulations other than by reference to the entity's federal income tax return. It contends that federal tax law does not define this term or specify any method by which to calculate it, rendering the term ambiguous. Shawnee argues that no statute or regulation requires income per books to be calculated according to GAAP, and it notes that other comprehensive bases for financial reporting have been recognized and authorized.[6]

In the heart of its argument, Shawnee contends that the unreasonable and illogical results produced by the Commonwealth's position must be considered. Shawnee notes that it is undisputed that it was insolvent before and after the cancellation of indebtedness and that on May 1, 1993, majority shareholders Charles and Virginia Kirkwood conveyed 1467 shares of Shawnee common stock, or 55 percent of outstanding shares, back to the corporation for no consideration. Additional Stipulation of Facts ¶ 30. Shawnee never made an operating profit during the period

in question, and in fact it incurred substantial losses. In addition, because the definition of "average net income" requires averaging the net income for the current year and each of the previous four years, that purported income will be considered through the year ending March 31, 1999.[7]

Shawnee refers to the principle that when the words of a statute are not clear it is presumed that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1). It notes that in a case involving the Pennsylvania franchise tax on domestic operations of multi-jurisdictional entities, the Court held that application of a statutory apportionment formula resulting in a value 44.5 percent higher than actual value was unfair and inequitable and required adjustment. *Unisys Corp. v. Commonwealth*, 726 A.2d 1096 (Pa.Cmwlth.1999). Because Shawnee maintains that its capital stock had no value in view of its financial condition and its history, it contends that the Department's assigned value under its interpretation of the fixed formula was far more disproportionate.

With regard to the Department's regulation at 61 Pa.Code § 155.26(h), which provides for no adjustment to net income or loss on account of nonrecurring or extraordinary items, Shawnee agrees with the panel's conclusion that it is not involved

---

**6.** As the Commonwealth points out, however, Shawnee has not sought to establish through stipulation that it actually employed some other recognized method of accounting. Shawnee states that it has not stipulated that it used GAAP for financial reporting purposes, but it acknowledges that the record shows that it excluded cancellation of debt in income per books when calculating its capital stock value but did not exclude that amount on Schedule M–1, Line 1. Shawnee maintains that its including those amounts on that schedule was not binding upon the Depart-

ment, and it asserts that it should not be bound by any reporting error.

**7.** According to Shawnee, even if it remained unprofitable and insolvent through that period, by rigidly applying the formula in Section 601(a) the Department would value its capital stock over $17,000,000 in the year ending March 31, 1997 and would impose additional taxes based upon essentially phantom value of over $500,000 through the tax year ending March 1999.

because the cancellation of debts of an insolvent is not income per books in the first instance. If the Court concludes otherwise, Shawnee states that before 1984 capital stock value was defined by taking into consideration: the average selling price of stock, corporate earnings, dividends declared and stockholder equity, with the "corporate earnings" element defined as "the book income as reported to the shareholders which is adjusted for distortions in the current and prior years created by nonrecurring-type gains and losses or by use or correction of inconsistent or erroneous accounting practices." 61 Pa.Code § 155.22. Shawnee asserts that income per books thus had "acquired a peculiar and appropriate meaning" within the contemplation of Section 1903(a) of the Statutory Construction Act of 1972 and that nothing in the 1983 legislation indicated an intent by the legislature to depart from this established meaning.

■ Finally, Shawnee argues that including cancellation of indebtedness for an insolvent taxpayer in income per books creates problems of constitutional dimension. The capital stock tax is justified on the premise that a corporation's property may be taxed in the state of its creation. *Commonwealth v. After Six, Inc.,* 489 Pa. 69, 413 A.2d 1017 (1980). In this case, however, where Shawnee had no operating profits during any of the periods at issue and its liabilities exceeded the fair market value of its assets, the determination of a capital stock value of $5,428,635 and a capital stock tax of $69,215 is so arbitrary and so far out of line with the actual value of the company as to be confiscatory. Shawnee cites *Norfolk & Western Railway Co. v. Missouri State Tax Commission,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968), in which the Supreme Court held that a state violated due process by rigidly applying a formula to determine the value

of a railway's rolling stock to be taxed by comparing the miles of track within the state to the total in all states, when the railway produced evidence that although over 8 percent of its track was located in the state, the actual value of the rolling stock located there was approximately 3 percent. The Court rejected rigid application of formulas when a distorted result is produced.

In a reply brief the Commonwealth asserts that effective for tax years beginning in 1984 the fixed formula became the only method authorized by the Tax Reform Code for determining stock value. Shawnee's references to actual value are irrelevant to the determination of capital stock value under the fixed formula. The regulation at 61 Pa.Code § 155.26(h) reflects the intent of the legislature in adopting the fixed formula, it maintains, because the legislature did not employ the term "corporate earnings," which by regulation did exclude "nonrecurring-type gains and losses" from "book income." Rather the legislature chose the more inclusive concept of "income per books." The Commonwealth asserts that the statutory definition of capital stock value and the Department's regulatory interpretation do not violate Shawnee's constitutional rights, quoting at length from *City of Pittsburgh v. Alco Parking Corp.,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974), which held that the judiciary should not interfere with a bona fide tax.

■ The Court agrees that the panel incorrectly applied provisions of the Internal Revenue Code of 1986 relating to taxable income for federal income tax purposes to define "income per books" under Pennsylvania's capital stock tax. As the Pennsylvania Chamber of Business and Industry (Amicus) asserts in an amicus brief, the concept of federal taxable income is relevant to computation of the Pennsylva-

nia corporate net income tax, and "taxable income" is defined in terms of federal taxable income in Section 401(3)(1)(A) of the Tax Reform Code, 72 P.S. § 7401(3)(1)(A).[8] Amicus cites 34 P.L.E. § 146 for a statement of the proposition that a change of language in different sections of a statute is prima facie evidence of a change of intent. *See also Corley v. Pennsylvania Board of Probation and Parole,* 83 Pa. Cmwlth. 529, 478 A.2d 146 (1984) (noting that fundamental principle of construction is that when a statute contains a given provision, omission of that provision from a similar section shows a different intent). As the Commonwealth stresses, Section 601(a) of the Tax Reform Code expressly states that average net income shall be determined from "the amount set forth as income per books on the income tax return filed by the entity with the Federal Government for such taxable year," not "taxable income," and Form 1120, Schedule M–1, Line 1, "Net income (loss) per books," is the only entry on the federal income tax return that could possibly reflect book net income.

The Court rejects Shawnee's citation to *Tool Sales & Service Co., Inc. v. Commonwealth,* 149 Pa.Cmwlth. 389, 613 A.2d 143 (1992), *aff'd,* 536 Pa. 10, 637 A.2d 607 (1993), to support a claim that "income per books" is ambiguous. That term was held to be ambiguous in the context of an S corporation only because the tax return for the period at issue did not include a line comparable to Schedule M–1, Line 1. There is no requirement for Pennsylvania to adopt federal "taxable income" in its calculation of capital stock value, and Pennsylvania has not done so. *Compare Smith v. Director, Division of Taxation,* 108 N.J. 19, 527 A.2d 843 (1987) (holding that the New Jersey legislature rejected the federal income tax model in adopting its gross income tax act and that other branches of government could not superimpose the Internal Revenue Code upon the state tax act in the guise of statutory construction).[9]

■ The question remains whether Shawnee should be permitted to exclude debt forgiveness from its income per books. Shawnee does not dispute that GAAP ordinarily would require the inclusion of the forgiven debt as income per books on the federal income tax return, and it does not dispute that it included forgiven debt as income per books during the years at issue here. It suggests that other accounting systems sometimes have been approved, but it does not assert that it has employed such other systems. Shawnee cites *Scott Electric Co. v. Commonwealth,* 692 A.2d 289 (Pa.Cmwlth. 1997), *exceptions overruled, adhered to,* 704 A.2d 205 (Pa.Cmwlth.1998), for the proposition that GAAP need not always be followed and that if an express regulation is contrary to GAAP in a particular instance, the regulation will control. In this case, the regulation in dispute, 61 Pa.Code

**8.** Amicus endorses the result reached by the panel but argues that the panel erred by relying upon statutory provisions relating to federal taxable income. It notes that the present fixed formula for determining capital stock value was adopted in an effort to end the cycle of valuation appeals as to the weight to be afforded various factors to be considered in determining actual value. The legislature did not employ the term "taxable income" in fashioning the capital stock value formula. Although GAAP ordinarily would dictate inclusion of discharge of indebtedness in income per books, Amicus argues that in the extreme circumstances of this case they may be modified to exclude the discharge of indebtedness so as to clearly reflect income.

**9.** *See Gilmour Manufacturing Co. v. Commonwealth,* 750 A.2d 948 (Pa.Cmwlth.2000), which compared the results reached in other jurisdictions that examined the issue involved there under similar or identical statutes.

§ 155.26(h), is consistent with the GAAP treatment of income per books by not allowing for adjustments for extraordinary or nonrecurring items.[10]

Shawnee's basic contention is its repeated assertion that because it was insolvent as defined in Section 108 of the Internal Revenue Code of 1986 during the periods at issue here, then its stock was necessarily worth nothing, and any positive value calculated under the statutory formula is therefore incorrect. However, Shawnee offers no support for this assertion. There is no question that a corporation may be technically insolvent and still have stock that is valuable. As Amicus points out, the "book income component" of the formula in Section 601(a) of the Tax Reform Code is not arbitrary but is derived from the second part of the "Three–Way Method" of computing capital stock value, which was formerly one of the approved methods specified under 61 Pa. Code § 155.24(b). Shawnee relies in part upon an assertion in the Additional Stipulations that the Kirkwoods conveyed substantial stock back to the corporation for no consideration because they thought it had no worth. The same stipulations also indicate that they retained a one-third ownership of Shawnee stock after transfer, presumably regarded as having value.

The Department performed a calculation of capital stock value according to express statutory provisions and according to the Department's regulations interpreting those provisions. In *Scott Electric Co.* this Court cited the Supreme Court's decision in *Tool Sales & Service Co., Inc.* for the propositions that agencies are entitled to deference in interpreting the statutes that they enforce and that where a scheme is technically complex, such as the Tax Reform Code and its regulations, a reviewing court must put aside its discretion for expertise of the administrative agency. In addition, the Supreme Court stated that regulations enforcing the Tax Reform Code will not be disregarded unless clearly inconsistent with the Code and that a taxpayer has a heavy burden of establishing that the regulations are clearly erroneous. *Id.* See also *Gilmour Manufacturing Co. v. Commonwealth,* 750 A.2d 948 (Pa. Cmwlth.2000). The Court concludes, therefore, that Shawnee's bald assertion that its stock must be of no value because it is insolvent is not sufficient to meet its heavy burden to establish that 61 Pa.Code § 155.26(h) is clearly erroneous or its at least equally heavy burden of showing that application of Section 601(a) of the Tax Reform Code works an unconstitutional confiscation of its property. Accordingly, after reconsideration of this matter, the Court grants the exceptions of the Commonwealth and affirms the orders of the Board.

President Judge COLINS dissents.

### ORDER

AND NOW, this 15th day of May, 2002, the exceptions filed by the Commonwealth of Pennsylvania in the above-captioned matter are hereby granted. The panel decision of this Court in *Shawnee Development, Inc. v. Commonwealth,* 764 A.2d 659 (Pa.Cmwlth.2000), is vacated, and the orders of the Board of Finance and Revenue are hereby affirmed. The capital stock tax liability of Shawnee Development, Inc, for

---

10. The Court observes that even when Section 108(a)(1)(B) of the Internal Revenue Code of 1986 does apply to exclude from gross income a discharge of indebtedness that occurs when the taxpayer is insolvent, such exclusion is not without a price. Section 108(b) requires that the amount excluded under Section 108(a)(1)(A), (B) or (C) shall be applied to reduce enumerated tax attributes of the taxpayer, including net operating loss and basis in property. *See United States v. Farley,* 202 F.3d 198 (3d Cir.2000).

the tax year ending March 31, 1995 is $69,215.

## CONCURRING OPINION BY Judge LEADBETTER.

I agree with the majority's interpretation of Section 601(a),[1] as well as the result in this case. However, I write separately to address a serious constitutional question which the majority addresses only in passing. As the majority notes, the Capital Stock Tax is currently computed by a fixed formula provided by 1983 amendment(s)[2] to the Tax Reform Code. Prior to enactment of that amendment, the tax was based upon a value estimated by the officers of the company to be the "actual value in cash" of the corporation's capital stock, taking into consideration sale price, earnings or profits, assets (both tangible and intangible) and indebtedness. Section 601 of the Tax Reform Code. *See* ISADORE H. KREKSTEIN & DAVID H. ROSENBLUTH, CORPORATE TAXATION AND PROCEDURE IN PENNSYLVANIA 110 (1952). This method of arriving at stock value for tax purposes was, however, problematic. As has been noted:

> For a period well over 100 years, the base of taxation of the Capital Stock Tax was the actual worth of a taxpayer's capital stock. While regulatory efforts were made to rationalize the process of determining actual worth, they met with limited success. As a result, liability was difficult to predict, settlements were frequently appealed, and the final liability was often a negotiated figure.

26 SUMMARY OF PA JURISPRUDENCE 2d., § 2:57 (West 1998). Thus, the statutory change from an estimated value to a fixed formula did not reflect a legislative intent to alter the character of the tax or, more precisely, the subject of the tax. Rather, the purpose of the amendment was to simplify the process of arriving at a value and limit the extent of disputes and litigation spawned by the utilization of a standard based upon subjective judgments. In other words, while the Capital Stock Tax remains a tax on the actual cash value of the corporation's capital stock, the fixed formula was adopted to provide a simple and objective method of computing that value.

Implementation of such fixed formulae is both common and generally beneficial. The Due Process Clause, however, requires that any formula so utilized be fair, *i.e.,* produce results which are reasonably related to the actual value which is the subject of the tax. *Container Corp. v. Franchise Tax Bd.* 463 U.S. 159, 169–70, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983); *Mobil Oil Corp. v. Comm'r of Vermont,* 445 U.S. 425, 453–54, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 272–75, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 133–34, 51 S.Ct. 385, 75 L.Ed. 879 (1931); *Unisys Corp. v. Commonwealth,* 726 A.2d 1096, 1101–03 (Pa. Cmwlth.1999). While these cases generally arise in the context of apportioning income for commerce clause purposes, the principles of due process they enunciate apply with equal force to any statute which mandates use of a fixed formula to compute a tax where the actual value subject to the tax is difficult or impossible to ascertain.

Determining whether any such formula satisfies the requirements of due process necessarily implicates a two-part inquiry. First is whether the formula is on its face reasonably designed to fairly approximate the value it purports to measure. If not,

---

1. Section 601(a) of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7601(a).

2. Act of December 23, 1983, No. 89, P.L. 360.

the statute cannot pass constitutional muster. No claim is made here that the formula itself is intrinsically arbitrary, nor would any such claim have merit. Where, as here, the formula is not facially arbitrary, "it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases." *Hans Rees' Sons*, 283 U.S. at 133. In other words, the statute will be disturbed only when the taxpayer has established by "clear and cogent evidence" that the formula has yielded a taxable value "out of all appropriate proportion" to the actual value subject to the tax or "led to a grossly distorted result." *Moorman*, 437 U.S. at 274 [quoting *Hans Rees' Sons*, 283 U.S. at 135 and *Norfolk & W. Ry. Co. v. State Tax Comm'n*, 390 U.S. 317, 326, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968) ].

In this appeal, a substantial challenge has been raised to the constitutionality of the fixed formula as applied in this case. For the tax years in question, it is undisputed that the company was insolvent both before and after the restructuring of debts which caused it to recognize income on its financial statements, and it had no operating profits. Thus, Shawnee argues that, "Revenue's determination of a $5,428,635 capital stock value and imposition of capital stock tax of $69,215 for the March 1995 Tax Year, a period in which it had no operating profits and zero net worth, is a result so arbitrary and so far out of line with the actual value of the company as to be illegal and confiscatory." Appellant's brief at 44.

At first blush, this statement would appear self-evident. The difficulty, however, lies in the problem which caused the General Assembly to adopt the fixed formula in the first place: ascertaining value is a complex and difficult matter. While book value (net worth) and operating income are important factors, they are not the only factors to be considered. As one text has noted:

> It is probably rather obvious by now that book value does not reflect the current value of the assets and is, at best, only one of several criteria to be considered in determining the stock value. If book value and market value are substantially the same, then it may be merely by coincidence. Valuation of all or part of the enterprise's stock is a subjective matter.

ANTHONY PHILLIPS, ET AL., BASIC ACCOUNTING FOR LAWYERS 211 (4th ed.1988). *See also In re Glosser Bros., Inc.*, 382 Pa.Super. 177, 555 A.2d 129 (Pa.Super.1989); HAMILTON &

BOOTH, BUSINESS BASICS FOR LAW STUDENTS, ESSENTIAL TERMS AND CONCEPTS 193–222 (2d ed.1998). Moreover:

> It is axiomatic under the decisions that the stock of a corporation may have an actual value notwithstanding that liabilities exceed assets.
>
> . . . .
>
> It therefore seems that although a corporation is insolvent in the sense that its liabilities exceed its assets, its stock, nevertheless, for the purpose of taxation, might have a substantial value if other factors establish that the shares, in fact, have a value.
>
> . . . .
>
> Each case should be judged on the facts and circumstances surrounding it.

KREKSTEIN & ROSENBLUTH at 162–63.

Thus, it would appear that the only way Shawnee could establish a due process violation is by way of competent expert evidence regarding the actual value of the capital stock. The stipulations of fact upon which we must decide this appeal are devoid of any such evidence, and the burden of establishing the invalidity of the tax plainly rests with the taxpayer. *See Lev-*

*inthal v. Philadelphia*, 518 Pa. 233, 239, 542 A.2d 1328, 1331 (1988). Thus, although Shawnee has made a compelling argument that in this case the fixed formula may have led to a grossly distorted capital stock value, it clearly has failed to meet its burden of proof on the issue. Accordingly, I agree that we must affirm.

