IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kegerreis Outdoor Advertising
Company,
               Petitioner      :
                               :  No. 1256 C.D. 2016
             v.              :
                               :  Argued: March 7, 2017
Department of Transportation,  :
               Respondent  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH                    FILED: April 3, 2017

Kegerreis Outdoor Advertising Company (Petitioner) petitions for review of the June 27, 2016 order of the Secretary of the Department of Transportation (DOT) which denied Petitioner's exceptions to the proposed report of a hearing officer and finalized the hearing officer's order revoking Petitioner's sign permit for the southern face of its sign.

**Facts and Procedural History**

The underlying facts of this case are not in dispute and were stipulated to at earlier stages in these proceedings.[1] On July 6, 2011, Petitioner applied for an

---

[1] The record includes a Stipulation of Settlement filed with DOT on February 1, 2012, as well as a Joint Stipulation of Facts filed on October 15, 2013.

outdoor advertising device permit from DOT, seeking to erect a sign on property located at 4200 Paxton Street, Harrisburg, Pennsylvania.[2] This property is also located in Swatara Township, Dauphin County, and Petitioner had previously received a permit from Swatara Township to erect the sign. The proposed sign was a "V-shaped" structure with two sign faces, each measuring 300 square feet and consisting of LED displays, supported by a steel monopole approximately 57 feet off the ground. The proposed sign would be within 660 feet of, and visible from, Interstates 83 and 283 (I-83, I-283, respectively). (Findings of Fact Nos. 1-5; Stipulation of Settlement at ¶¶1-6.)

On September 20, 2011, DOT's Engineering District 8-0 (the District) denied Petitioner's permit application on the stated basis that the proposed sign was to be located within 500 feet of the interchange area of I-83 and I-283 in violation of section 5(c)(2)(i) of the Outdoor Advertising Control Act of 1971 (Act), Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. § 2718.105(c)(2)(i), and section 445.4(b)(2)(i) of DOT's regulations, 67 Pa. Code §445.4(b)(2)(i).[3] On October 3, 2011, Petitioner filed an appeal of the District's denial. On December 30, 2011, the District issued a supplemental denial on the basis that the proposed sign was to be located within 500 feet of the interchange area of State Route (SR) 322 in violation of the same statute and regulation. Petitioner again filed an appeal relating to this supplemental denial. (Findings of Fact Nos. 6-9; Stipulation of Settlement at ¶¶6-9.)

---

[2] This area is locally known as the Eisenhower Interchange.

[3] Section 5(c)(2)(i) of the Act, known as the "Interchange Prohibition," as well as the accompanying regulation, contain identical language stating that "no structure may be erected adjacent to or within five hundred feet of an interchange."

On February 1, 2012, the parties submitted a Stipulation of Settlement to DOT whereby the District agreed to the issuance of a sign permit to Petitioner. The Stipulation of Settlement noted Petitioner's assertion that the sign would be visible only from I-83 and I-283 and no other controlled highway, and reserved the District's right to inspect the sign after it is constructed and in operation. The Stipulation of Settlement further reserved the District's right to take administrative action should any of the sign's advertising be visible from any controlled highway other than I-83 and I-283 and noted Petitioner's agreement that it would not seek to preclude the District from revoking its permit or from presenting evidence or testimony concerning such visibility. (Findings of Fact Nos. 9-10; Stipulation of Settlement at ¶¶10-15.)

Petitioner constructed the sign in late March 2012. On December 27, 2012, after completing an investigation of the as-built sign, the District revoked Petitioner's permit because the southern face of the sign was visible from SR 322, and within 500 feet of Ramps E and F on SR 322 in violation of section 5(c)(2)(i) of the Act and section 445.4(b)(2)(i) of DOT's regulations. On January 28, 2013, Petitioner timely appealed the District's revocation of its permit. (Findings of Fact Nos. 11-13; Joint Stipulation of Facts at ¶¶19-21.)

The matter was assigned to a DOT hearing officer. The parties filed a joint stipulation of facts on October 15, 2013, reciting all of the facts above. (Reproduced Record (R.R.) at 51a-52a.) The hearing officer subsequently conducted a hearing on October 22, 2013, which included testimony from Timothy Ketterer, an outdoor advertising supervisor manager for the District; Christopher Drda, a design

3

services engineer for the District; and Austin Kegerreis, Petitioner's General Manager.[4] (R.R. at 53a-184a.)

For reasons not evident in the record, a proposed report was issued by a different hearing officer on September 24, 2015, which affirmed the District's revocation of Petitioner's permit. The hearing officer found as fact that SR 322 was part of the primary system of roadways, it was a limited access road in Swatara Township, the southern face of the sign was visible from the main-traveled way of SR 322 and Ramps E and F, and the sign was within 500 feet of Ramp E. (Findings of Fact Nos. 15-17.) Based on these findings, the hearing officer concluded that the District properly revoked Petitioner's permit. (Conclusion of Law No. 7.) The hearing officer directed that the southern face of the sign be removed. Petitioner filed exceptions. By order dated June 27, 2016, the Secretary denied the exceptions and made the hearing officer's proposed report final. (R.R. at 327a.) Petitioner thereafter filed a petition for review with this Court.

On appeal,[5] Petitioner argues that the Secretary erred in adopting the proposed report because: (1) I-83 and I-283, the more restrictive highways with respect to regulation of outdoor signs, and not SR 322, are the controlling highways in this matter; (2) neither Ramp E nor Ramp F are interchanges; and (3) DOT failed

---

[4] In his decision, the hearing officer noted that DOT conceded that the "Interchange Prohibition" does not prohibit the sign's presence with respect to I-83 or I-283 because there is no interchange between those roads; rather, they simply merge without entrance or exit ramps. (Proposed Report at 7.)

[5] Our scope of review from an administrative agency decision is whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights were violated. *Adams Outdoor Advertising, Ltd. v. Department of Transportation*, 860 A.2d 600, 604 (Pa. Cmwlth. 2004), *appeal denied*, 887 A.2d 1242 (Pa. 2005).

to produce substantial evidence that the sign was within 500 feet of Ramp E or Ramp F. We disagree with Petitioner's arguments.

## Discussion

The purpose of the Act is to protect the Commonwealth's interest in receiving federal highway funds and, at the same time, to further the national policy of highway beautification. *See* Section 102 of the Act, 36 P.S. §2718.102; *Patrick Media Group v. Department of Transportation*, 620 A.2d 1125 (Pa. 1991). We have described the Act's goal as to limit the proliferation of outdoor advertising devices in areas adjacent to the Commonwealth's interstate and primary highways. *Patrick Media Group*, 602 A.2d at 1126.

Section 4 of the Act addresses control of outdoor advertising and provides in relevant part as follows:

> To effectively control outdoor advertising, while recognizing it to be a legitimate commercial use of property and an integral part of the business and marketing function, no outdoor advertising device shall be erected or maintained: (1) **within six hundred sixty feet of the nearest edge of the right-of-way if any part of the advertising or informative contents is visible from the main-traveled way of an interstate or primary highway** .
> . . .

36 P.S. §2718.104 (emphasis added). Section 104 goes on to list numerous exceptions, none of which are applicable to this case.

Section 5(c)(2)(i) of the Act further limits the spacing of signs, providing that:

> (c) In all other zoned and unzoned commercial or industrial areas, the criteria set forth below shall apply:
> . . .

5

(2) Spacing of signs:

(i) Along the interstate system and limited access highways on the primary system, no two sign structures shall be spaced less than five hundred feet apart; and outside the boundaries of cities of all classes and boroughs, **no structure may be erected adjacent to or within five hundred feet of an interchange** or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.

36 P.S. §2718.105(c)(2)(i) (emphasis added). As noted above, this so-called "Interchange Prohibition" is repeated in section 445.4(b)(2)(i) of DOT's regulations, which states as follows:

(b) Maintenance. A sign may not be erected or maintained inconsistent with the following criteria:

. . .

(2) Spacing of signs. Spacing of signs shall include the following:

(i) Along the interstate system and limited access highways on the primary system, no two sign structures may be spaced less than 500 feet apart; and outside the boundaries of cities of all classes and boroughs, **no structure may be erected adjacent to or within 500 feet of an interchange** or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.

67 Pa. Code §445.4(b)(2)(i) (emphasis added).

We have described this "Interchange Prohibition" as specifically intended "to control the proximity of certain-size signs at the exits from high-speed highways where vehicles are in the process of maneuvering to change directions while reducing speed, so that the distraction such signs would create for the exiting operator would be greatly reduced or diminished, if not eliminated." *Martin Media v. Department of Transportation*, 700 A.2d 563, 567 (Pa. Cmwlth. 1997), *appeal denied*, 725 A.2d 184 (Pa. 1998). Moreover, the contents of a sign need not be legible to be subject to control under the Act; rather, mere visibility is sufficient. *See* Section 3(10) of the Act, 36 P.S. §2718.103(10) (defining "visible" as meaning "capable of being seen (whether or not legible) without visual aid by a person of normal visual acuity.")

**More Restrictive Regulations**

Petitioner relies on language in DOT's Highway Beautification Manual and DOT's sign permit application, Form RW-745, regarding application of the more restrictive requirements when a sign is visible from more than one controlled highway, in support of its argument that I-83 and I-283, and not SR 322, are the controlling highways in this matter. More specifically, DOT's Highway Beautification Manual provides that "[i]f a sign is erected adjacent to the primary system, but is within 660 feet of the right-of-way and visible from the main-traveled way of an interstate highway, the more restrictive interstate requirements apply." (R.R. at 251a.) DOT's Form RW-745 similarly states that "[i]f a sign message is visible from more than one controlled highway, the more restrictive requirements (if any) apply." (R.R. at 188a.) However, such reliance ignores the express language and purpose of the "Interchange Prohibition" provision of the Act.

7

By its very terms, the "Interchange Prohibition" is applicable to both highways "[a]long the interstate system and limited access highways on the primary system," such as SR 322. Section 5(c)(2)(i) of the Act, 36 P.S. §2718.105(c)(2)(i). As noted above, this prohibition is repeated in section 445.4(b)(2)(i) of DOT's regulations. The language of the Act and its accompanying regulation expressly prohibit the placement of a sign within 500 feet of an interchange. The obvious purpose of such a prohibition is to protect the safety of the traveling public by reducing distractions to the operators of motor vehicles at significant decision points.

In *Martin Media*, DOT denied an application for a sign permit on the basis that a proposed sign was not 500 feet from the end of pavement widening at a highway exit, as required by the "Interchange Prohibition." The parties disagreed on where the point of measurement began, with DOT measuring from a change in the paving from main-traveled way paving to shoulder paving and applicant measuring from the point of painted delineations that directed traffic. Ultimately, we affirmed the order of DOT's Secretary denying the application, stating that DOT's interpretation of the statute was more plausible and consistent with the purposes of the statute than was the interpretation offered by applicant. In so doing, we explained the legislative intent behind the enactment of the "Interchange Prohibition" as seeking "to control the proximity of certain-size signs at the exits from high-speed highways where vehicles are in the process of maneuvering to change directions while reducing speed, so that the distraction such signs would create for the exiting operator would be greatly reduced or diminished, if not eliminated." 700 A.2d at 567.

Moreover, an agency's interpretation of a regulatory statute must be afforded considerable weight and deference by a reviewing court. *Martin Media*, 700

A.2d at 566 (citing *Popowsky v. Pennsylvania Public Utility Commission*, 669 A.2d 1029, 1044 (Pa. Cmwlth. 1995), *rev'd on other grounds*, 706 A.2d 1197 (Pa. 1997)).[6] Indeed, the agency's interpretation of its statute may not be disregarded by this Court unless it is clearly erroneous or is inconsistent with the intent or purpose of the statute. *Id.* Here, DOT's interpretation of the Act, that the location of a given sign must satisfy the requirements of the "Interchange Prohibition" for both interstate and primary highways when both are part of the interchange, is not clearly erroneous and in fact is consistent with the intent and purpose of the Act as noted above.

Further, any such purported reliance by Petitioner on DOT's Highway Beautification Manual and Form RW-745 is belied by the February 1, 2012 Stipulation of Settlement. In this Stipulation, Petitioner noted that its application for a sign permit asserted, under penalty of perjury, that "the sign would be visible only from Interstates 83 and 283 and no other controlled highway, **including [SR] 322**." (R.R. at 16a) (emphasis added). Additionally, Petitioner noted that its witnesses would testify that the sign would only be visible from I-83 and I-283 "and no other controlled highway." *Id.* Further, Petitioner agreed not to "seek to exclude . . . any evidence or testimony concerning the visibility of the advertising contents **from [SR] 322**" in any subsequent legal proceeding. *Id.* (emphasis added). While the parties

---

[6] In *Popowsky*, petitioners contested the Pennsylvania Public Utility Commission's (PUC's) approval of a telephone company's application for alternative form of regulation, filed pursuant to former section 3003 of the Public Utility Code, 66 Pa.C.S. §3003, *repealed by* the Act of November 30, 2004, P.L. 183. In rendering its decision, the PUC engaged in an interpretation of former Chapter 30 of the Public Utility Code to determine whether that chapter requires competitive safeguards to be in place before services are deregulated, or whether the PUC may find the services to be competitive and impose the required safeguards at some future time. The PUC opted for the latter interpretation. In reviewing the PUC's decision, this Court recognized that the PUC's interpretation of its regulating statute was entitled to great weight and deference, unless it was "clearly erroneous" or "inconsistent with the intent or purpose of that statute." 669 A.2d at 1044.

further agreed that the Stipulation would not preclude, prevent, or estop Petitioner from presenting any defense or response to any administrative action, (R.R. at 17a), the multiple references to SR 322 reflects Petitioner's awareness where its sign had to be located with respect to other controlled highways, including SR 322, consistent with the spacing requirements in the Act.

**Ramps E and F**

Alternatively, Petitioner argues that the sign does not violate the "Interchange Prohibition" with respect to SR 322 because Ramps E and F are not interchanges, but merely merge points and/or simply points at which SR 322 continues in a different direction. We disagree.

The term "interchange" is not defined in the Act or DOT's regulations. In such cases, section 1903(a) of the Statutory Construction Act of 1972 provides that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." 1 Pa.C.S. §1903(a). "Moreover, in ascertaining the common and approved usage or meaning, we may have to resort to the dictionary definitions of the terms left undefined by the legislature." *P.R. v. Department of Public Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000), *aff'd*, 801 A.2d 478 (2002) (citations omitted). The Merriam-Webster Collegiate Dictionary defines "interchange" as "a junction of two or more highways by a system of separate levels that permit traffic to pass from one to another without the crossing of traffic streams." Merriam-Webster Collegiate Dictionary 630 (9th ed. 1983).

Additionally, while not defined in the Act, the language of the "Interchange Prohibition" itself provides guidance wherein it discusses the measurement of 500 feet as being calculated "from the beginning or ending of the

10

pavement widening **at the exit from or entrance to the main-traveled way**." 36 P.S. §2718.105(c)(2)(i) (emphasis added). Further, this Court has previously affirmed DOT's interpretation of the terms "exit" or "entrance" within the "Interchange Prohibition" to mean any or all exits or entrances from the main-traveled way. *George Washington Motor Lodge Co. v. Commonwealth, Department of Transportation*, 545 A.2d 493, 495 (Pa. Cmwlth. 1988) (rejecting applicant's interpretation of the 500 feet requirement in the "Interchange Prohibition" as only applying to the side of the roadway from where the sign is visible and accepting DOT's interpretation of this requirement as applying to any and all exits or entrances from the sign). As noted above, an agency's interpretation of its governing statute is entitled to considerable weight and deference. *Martin Media*.

In this case, there can be no dispute that the Eisenhower Interchange is a junction of two or more highways where travelers can enter or exit I-83, I-283, SR 322, and the general road system. Indeed, traffic can pass from one highway to another without crossing traffic streams. Ramp E is an exit off of the main-traveled way of SR 322 westbound and onto I-83 northbound. Ramp F is an entrance onto the main-traveled way of SR 322 eastbound from I-83 southbound. While Petitioner correctly notes that the roadway immediately following these exit/entrance ramps remains SR 322, but in an opposite direction, it does so only for a short distance and serves as the only means to connect SR 322 and I-83. Thus, Ramps E and F serve as a means to permit a motorist to pass from the main-traveled way of SR 322 to I-83 without the crossing of traffic streams. Applying the dictionary definition above, we conclude that Ramps E and F constitute interchanges.

11

**Substantial Evidence**

Finally, Petitioner argues that DOT failed to present substantial evidence that the sign was within 500 feet of any interchange. Again, we disagree.

We note first that in the February 1, 2012 Stipulation of Settlement, Petitioner stipulated that the property upon which the sign is located is adjacent to I-83, I-283, and SR 322. (R.R. at 15a.) Before the hearing officer, Timothy Ketterer, an outdoor advertising supervisor manager for the District, testified that he drafted the District's December 27, 2012 letter to Petitioner revoking the permit insofar as it relates to the southern face of the sign on the basis of its visibility from SR 322 and its proximity, within 500 feet, to Ramps E and F. (R.R. at 70a-71a.) Ketterer explained that he drove through the entire Eisenhower Interchange area, marked all locations on a Google Maps image from where the sign was visible, and noted that the sign was within 500 feet of Ramps E and F. (R.R. at 79a-81a.)

Regarding the 500 feet, while Ketterer acknowledged that he never conducted an actual measurement from the beginning of the widening on Ramp E or the ending of the widening on Ramp F to the location of the sign, as set forth in the "Interchange Prohibition," he noted that such a measurement was unnecessary because the sign is adjacent to both ramps and easily visible when physically standing on either ramp. (R.R. at 82a, 105a.) More importantly, however, during the testimony of Austin Kegerreis, Petitioner's General Manager, Petitioner introduced a copy of a site plan, drawn to scale, with respect to the location of the sign. This site plan clearly reveals that the sign is well within 500 feet of Ramp E. Thus, there is substantial evidence in the record that Petitioner's sign was in violation of the "Interchange Prohibition."

12

## Conclusion

Consistent with the language of section 5(c)(2)(i) of the Act and section 445.4(b)(2)(i) of DOT's regulations, as well as DOT's interpretation of the same, the "Interchange Prohibition" is applicable to both interstate and limited access highways on the primary system, such as SR 322. Because the southern face of Petitioner's sign is located within 500 feet of Ramp E, an interchange, the sign is violative of the "Interchange Prohibition." Thus, the Secretary of DOT did not err in denying Petitioner's exceptions and finalizing the hearing officer's order revoking Petitioner's sign permit for the southern face of its sign.

Accordingly, the order of the Secretary is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kegerreis Outdoor Advertising      :
Company,                           :
                    Petitioner     :
                                   :   No.  1256 C.D. 2016
            v.                     :
                                   :
Department of Transportation,      :
                    Respondent     :

## ***ORDER***

AND NOW, this 3rd day of April, 2017, the order of the Secretary of the Department of Transportation, dated June 27, 2016, is hereby affirmed.


_____
PATRICIA A. McCULLOUGH, Judge