IN THE COMMONWEALTH COURT OF PENNSYLVANIA

430 Stump Road, LLP,             :
                Petitioner    :
                               :
        v.                    :
                               :
Commonwealth of Pennsylvania,  :   No. 502 F.R. 2022
              Respondent  :   Submitted: March 5, 2025

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED: May 15, 2025

This case is before the Court *en banc* for consideration of exceptions filed by the Commonwealth of Pennsylvania (Commonwealth) from a panel decision of this Court. The panel reversed a determination of the Department of Finance and Revenue (F&R) that imposed a real estate transfer tax on a transfer of an interest in a real estate company, 430 Stump Road, LLP (Stump LLP). The reported panel decision provides detailed background and analysis, which are repeated here only to the extent necessary to this opinion.

The Commonwealth excepts to nearly every aspect of the panel decision. After thorough review, we overrule the Commonwealth's exceptions and direct the entry of final judgment in favor of Stump LLP.

# I. Background

In 1994, Stump LLP purchased real property located at 430 Stump Road, Montgomeryville, Pennsylvania (Real Property). *430 Stump Road, LLP*, No. 2200071 (F&R Aug. 25, 2022) (F&R Dec.), at 1. Stump LLP is a limited liability partnership and is a "real estate company" as that term is defined in Section 1101-C of the Tax Reform Code of 1971 (Tax Code),[1] 72 P.S. § 8101-C.[2] Joint Stipulation of Facts filed Nov. 29, 2023 (Stip.) at 2. Prior to the death of Allen Kanter (Settlor), the Allen L. Kanter Revocable Trust (Revocable Trust) owned 98% of Stump LLP. *Id.* The terms of the Revocable Trust designated a second trust, the Allen L. Kanter Marital Trust FBO Valentina Kanter (Marital Trust), as the beneficiary to receive the Revocable Trust's 98% partnership interest in Stump LLP after Settlor's death. *Id.* at 3. Settlor's wife was the beneficiary of the Marital Trust. *Id.* In March 2017, upon Settlor's death, the Revocable Trust transferred its partnership interest in Stump LLP to the Marital Trust. *Id.*

In September 2021, the Department of Revenue, Bureau of Individual Taxes ("Department"), issued a Notice of Assessment to Stump LLP, imposing real estate transfer tax on the computed value of the Real Property. F&R Dec. at 1-2. The Department reasoned that the transaction was subject to real estate transfer tax because it was not a transfer of real estate due to merger. *Id.* at 2.

Stump LLP petitioned for review by the Bureau of Appeals (BOA), arguing that the transfer was not subject to the transfer tax because it was a transfer from the trustee of a living trust to the beneficiary of a living trust. F&R Dec. at 2. The BOA rejected that argument and sustained the transfer tax assessment, positing

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[2] Added by the Act of May 5, 1981, P.L. 36.

that the exception advanced by Stump LLP applies only to a direct transfer of realty, not to the transfer of an interest in a real estate company. *Id.* The BOA likewise rejected Stump LLP's argument that the transfer involved no change in ownership as the beneficiaries of the two trusts were the same; the BOA stated that a trust itself does not have owners, and as a transfer of a 98% interest in Stump LLP, a real estate company, was made between the trusts, the Department properly assessed tax on the computed value of the Real Property held by Stump LLP. *Id.*

Stump LLP filed a petition for relief with F&R, which denied the petition. F&R Dec. at 5. Addressing Stump LLP's argument that the transfer was not subject to transfer tax because it was a transfer from a trustee of a living trust to the beneficiary of a living trust, F&R upheld the Department's application of the tax because the transfer at issue was not an actual transfer of an interest in real estate, but a transfer of an ownership interest in a real estate company, which the Department concluded was subject to tax. *Id.* at 6. F&R also found that Stump LLP failed to present sufficient evidence to support its claims that the Department's applicable regulation was improperly promulgated and conflicts with the authorizing statute. *Id.* F&R similarly rejected Stump LLP's contention that the transfer was not subject to tax because there was no change in ownership or because the transfer was between members of the same family. *Id.*

Stump LLP then filed a petition for review in this Court, which reversed in a three-judge panel decision. *See 430 Stump Rd., LLP v. Commonwealth of Pa.*, 319 A.3d 626 (Pa. Cmwlth. 2024) (Panel Dec.). First, the panel agreed with Stump LLP that the Revocable Trust's transfer of its 98% interest in Stump LLP to the Marital Trust after Settlor's death was not subject to the real estate transfer tax because it constituted a transfer from the trustee of a living trust after the death of

3

the settlor, pursuant to Section 1102-C.3(9.1) of the Tax Code, 72 P.S. § 8102-C.3(9.1).[3] Panel Dec., 319 A.3d at 632. Further, the panel determined that F&R's application of Section 91.193(b)(34) of its regulations, 61 Pa. Code § 91.193(b)(34), was not consistent with that conclusion and was, therefore, improper and would be disregarded. Panel Dec., 319 A.3d at 632. The panel concluded as a matter of law that Stump LLP had sustained its burden of proving that no transfer tax was owed. *Id.* at 633.

The Commonwealth filed exceptions, which are before us *en banc*.[4]


## II. Relevant Statutes and Regulations

Section 1102-C of the Tax Code provides:

Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one per cent of the value of the real estate within this Commonwealth represented by such document, which State tax shall be payable at the earlier of the time the document is presented for recording or within thirty days

---

[3] Added by the Act of July 2, 1986, P.L. 318.

[4] "In tax appeals from [F&R], this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration." *Am. Elec. Power Serv. Corp. v. Commonwealth of Pa.*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth. 2018) (citing *Consol. Rail Corp. v. Commonwealth of Pa.*, 679 A.2d 303, 304 (Pa. Cmwlth. 1996)). We review determinations of F&R *de novo*. *Am. Elec. Power*, 184 A.3d at 1034 n.7 (citing *Kelleher v. Commonwealth of Pa.*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997)). However, our review in tax appeals is limited to the construction, interpretation and application of state tax laws to a given set of facts. *Am. Elec. Power*, 184 A.3d at 1034 n.7 (quoting *United Servs. Auto. Ass'n v. Commonwealth of Pa.*, 618 A.2d 1155, 1156 (Pa. Cmwlth. 1992) (quotation marks omitted) (additional citation omitted)).

of acceptance of such document or within thirty days of becoming an acquired company.

72 P.S. § 8102-C.

Section 1101-C of the Tax Code, in pertinent part, defines a "document" as

[a]ny deed, instrument or writing which conveys, transfers, demises, vests, confirms or evidences any transfer or demise of title to real estate in this Commonwealth . . . . "Document" shall also include a declaration of acquisition required to be presented for recording under [S]ection 1102-C.5 of this article.

72 P.S. § 8101-C.

Section 1102-C.5(c) of the Tax Code requires that

[w]ithin thirty days after becoming an acquired company, the company shall present a declaration of acquisition with the record of each county in which it holds real estate for the affixation of documentary stamps and recording. Such declaration shall set forth the value of real estate holdings of the acquired company in such county.

72 P.S. § 8102-C.5(c), added by the Act of July 2, 1986, P.L. 318.

Section 1102-C.5(a) of the Tax Code provides, in pertinent part, that

[a] real estate company is an acquired company upon a change in the ownership interest in the company, however effected, if the change . . . has the effect of transferring, directly or indirectly, ninety per cent or more of the total ownership interest in the company . . . .

72 P.S. § 8102-C.5(a).

Section 1102-C.3 of the Tax Code lists a number of real estate transfers that are not subject to the real estate transfer tax. Pertinent here, under Section 1102-C.3(9.1), no transfer tax is to be imposed on

[a] transfer for no or nominal actual consideration from a trustee of a living trust after the death of the settlor of the

5

trust or from a trustee of a trust created pursuant to the will of a decedent to a beneficiary to whom the property is devised or bequeathed.

72 P.S. § 8102-C.3(9.1).

Section 91.193(b) of the F&R regulations promulgated in relation to the Tax Code lists a number of transactions that are not subject to real estate transfer tax, including, consistent with the Tax Code, a "[t]ransfer[] from the trustee of a testamentary trust or living trust after the death of the settlor . . . ." 61 Pa. Code § 91.193(b)(34). However, Section 91.193(c) of the F&R regulations purports to limit the effect of that provision by stating that "Subsection (b) has no application to acquisitions of real estate companies as provided in [Section] 91.202 (relating to acquired real estate company)." 61 Pa. Code § 91.193(c). Section 91.202 of the F&R regulations, consistent with the Tax Code, provides that "[a] real estate company becomes acquired upon a change in the ownership of the company, if the change in the ownership interest . . . has the effect of transferring, directly or indirectly, 90% or more of the total capital and profits ownership interest in the company." 61 Pa. Code § 91.202(a)(2).

### III. Discussion – the Commonwealth's Exceptions
### A. Legislative Intent

Before the panel, Stump LLP argued that no transfer tax was due because the transfer was from a trustee of a living trust to the beneficiary of a living trust. The Commonwealth contended that, although an actual, *i.e.*, direct, transfer of interest in real estate is not subject to transfer tax, a transfer of ownership interest in a real estate company remains subject to transfer tax under Section 1102-C.3(9.1) of the Tax Code, 72 P.S. § 8102-C.3(9.1). The Commonwealth posited that the Tax

6

Code makes distinctions between a direct transfer of real estate and the transfer of an interest in a real estate company. *See* 72 P.S. § 8102-C.3(6) & (20). Accordingly, the Commonwealth maintained that a transfer of an interest in a real estate company is subject to transfer tax.

The panel, however, agreed with Stump LLP that the legislature intended to apply exclusions[5] from real estate transfer tax to transfers of interests in real estate companies and direct real estate transfers alike. In its first exception to the panel's decision, the Commonwealth maintains that the panel erred in holding that the Tax Code treats a direct transfer of real estate in the same manner as a transfer of an interest in a real estate company. The Commonwealth points to several statutory distinctions between direct and indirect transfers of real estate, such as, for example, that direct transfers are taxed regardless of the percentage of interest transferred, while indirect transfers are taxed only if at least a 90% interest is transferred within a three-year period. The Commonwealth argues that these distinctions show the legislature intended to treat direct and indirect transfers differently and that, therefore, this Court's panel erred in refusing to distinguish between the two types of transfers for purposes of exclusion from transfer tax.

In *Equitable Life Assurance Society v. Murphy*, 621 A.2d 1078 (Pa. Cmwlth. 1992), this Court stated that we could "discern no reason for distinguishing between a direct conveyance by deed and an indirect transfer through the sale of

---

[5] Before the panel, the parties disputed whether the Tax Code provision at issue is properly considered an exclusion, which is construed against the taxing body, or an exemption, which is construed against the taxpayer. *See Plum Borough Sch. Dist. v. Commonwealth of Pa.*, 860 A.2d 1155, 1157 n.4 (Pa. Cmwlth. 2004), *aff'd per curiam*, 891 A.2d 726 (Pa. 2006) (citing *Equitable Gas Co. v. Commonwealth of Pa.*, 335 A.2d 892 (Pa. Cmwlth.), *aff'd per curiam*, 347 A.2d 674 (Pa. 1975)). The panel did not decide that question, concluding that Stump LLP met its burden of proof in any event. The Commonwealth has not excepted to that conclusion. For convenience, we refer to the issue as one involving an "exclusion."

corporate stock where either method evidences an identical transfer of ownership interest in the real property." *Id.* at 1085. However, the Commonwealth argues that *Equitable Life* is distinguishable because it involved a local tax ordinance and also because that ordinance taxed both direct and indirect transfers based on the percentage of the interest transferred.

Stump LLP, predictably, agrees with the panel's decision. Stump LLP argues that the Commonwealth's position "attempts to obscure the clear reality that the transaction at issue meets the criteria for the statutory exclusion" from transfer tax. Stump LLP's Br. at 13. Stump LLP "acknowledges that there are differences in the manner in which real estate companies are taxed" but maintains that the plain language of Section 1102-C of the Tax Code applies the same transfer tax on transfers of both real estate and acquired real estate companies, and excludes both from tax on "transfers from the trustee of a testamentary trust or living trust after the death of the settlor as provided in [61 Pa. Code] § 91.156(f)."[6] Stump LLP's Br. at 13.

Stump LLP also disagrees with the Commonwealth's discussion of the panel's reliance on *Equitable Life*. As Stump LLP explains, the panel's citation of that case and others "were not intended to be analyzed on the basis of the local ordinances they applied[,] but rather, for the general premise that a transfer of an

---

[6] Section 91.156(f) of F&R's regulations states:

> A transfer of real estate from the trustee of a testamentary trust or a living trust after the death of its settlor is exempt from tax only if the transfer is made for no or nominal actual consideration and to the person who, under the governing instrument of the trust, has the vested remainder interest or who is otherwise entitled to receive the real estate or the proceeds from the sale of the real estate as a beneficiary under the terms of the trust.

61 Pa. Code § 91.156(f).

interest in a real estate company constitutes a transfer of an interest in real estate held by that company for transfer tax purposes." Stump LLP' Br. at 14.

The panel discussed this issue at length and in detail, as follows:

[T]he parties stipulated that Stump LLP is a real estate company. Stip. at 2. They further stipulated that the Revocable Trust transferred its 98% interest in Stump LLP to the Marital Trust. *Id.* Under Section 1102-C.5(a), therefore, Stump LLP became an acquired real estate company upon that transfer. 72 P.S. § 8102-C.5(a). Thus, the transfer imposed a statutory recording obligation of the declaration of acquisition under Section 1102-C.5(c). 72 P.S. § 8102-C.5(c); *see also* Stip., Ex. B at 1 (reflecting the filing of the declaration of acquisition). The declaration of acquisition was, by definition, a "document" triggering an obligation to pay a transfer tax under Sections 1101-C and 1102-C of the Tax Code. 72 P.S. §§ 8101-C & 8102-C.

However, Section 1102-C.3 of the Tax Code lists a number of real estate transfers that are not subject to the real estate transfer tax. Pertinent here, under Section 1102-C.3(9.1), no transfer tax is to be imposed on

[a] transfer for no or nominal actual consideration from a trustee of a living trust after the death of the settlor of the trust or from a trustee of a trust created pursuant to the will of a decedent to a beneficiary to whom the property is devised or bequeathed.

72 P.S. § 8102-C.3(9.1).

The parties stipulated that the Revocable Trust was a living trust. Stip. at 2. They further stipulated that Allen Kanter was the Settlor of the Revocable Trust, that the transfer of the Revocable Trust's 98% interest in Stump LLP occurred after Settlor's death, and that the Marital Trust was the beneficiary of the Revocable Trust. *Id.* at 3. Therefore, the transfer facially met the requirements of Section 1102-C.3(9.1).

9

[The Commonwealth] contends, however, that Section 1102-C.3(9.1) applies only to a transfer of real estate, not to a transfer of an interest in a real estate company. We cannot agree. Nothing in the Tax Code demonstrates a legislative intent to limit the application of Section 1102-C.3(9.1) in such a manner.

Section 1102-C of the Tax Code imposes the transfer tax upon the filing of a "document," and Section 1101-C expressly includes within the definition of a "document" *both* a writing that evidences a transfer of title to real estate *and* a declaration of acquisition relating to a real estate company. 72 P.S. §§ 8101-C & 8102-C. Had the legislature intended to differentiate between those two kinds of documents for purposes of the real estate transfer tax, it could have done so, but it did not. Neither does the Tax Code make such a distinction in listing the transfers *not* subject to the real estate transfer tax. We cannot add a provision to the Tax Code. *Ebersole v. Commonwealth*, 303 A.3d 546, 556 (Pa. Cmwlth. 2023). As this Court has repeatedly observed, "[w]hen interpreting a statute, we must listen attentively to what the statute says, but also to what it does not say." *Id.* (quoting *In re Canvassing Observation*, 241 A.3d 339, 349 (Pa. 2020) (internal quotation marks omitted)).

Further, we observe that, in *Health Group Care Centers, Inc. v. City of Pittsburgh*, 552 A.2d 323 (Pa. Cmwlth. 1988), this Court upheld the imposition of a Pittsburgh real estate transfer tax on that part of the purchase of a corporation attributable to the value of the nursing home that constituted the corporation's main asset. Similarly, in *Equitable Life Assurance Society v. Murphy*, 621 A.2d 1078 (Pa. Cmwlth. 1993), this Court upheld the imposition of a Philadelphia real estate transfer tax on what was essentially one equal partner's buyout of the partnership interest of the other equal partner, a corporation, where the sole asset of the partnership was a piece of real property and the sole asset of the selling partner was its interest in the partnership. Thus, in both instances, this Court treated the transfers of the corporations as transfers of those corporations' interests in real property for real estate transfer tax purposes. [Both real estate corporations and

10

real estate partnerships are real estate companies as defined in Section 1101-C of the Tax Code. 72 P.S. § 8101-C.] Notably, in *Equitable Life*, this Court provided the following useful analysis:

[T]here should be no distinction made between equitable and legal transfers of real property. . . . *We can discern no reason for distinguishing between a direct conveyance by deed and an indirect transfer through the sale of corporate stock where either method evidences an identical transfer of ownership interest in the real property.* If the execution or presentation of a deed within the taxable jurisdiction has been upheld as a valid taxable event, . . . then the recording of an equitable transfer of real property within that jurisdiction should also be taxable.

. . . .

Despite [a]ppellants' citations to the contrary, *we have previously recognized that transfers of "real estate corporations" constitute transfers of "interests" in property held by those corporations, which are properly taxed* by municipalities. . . . In *Health Group*, the City of Pittsburgh, like Philadelphia here, amended its city code to specify that stock purchases would be taxed as realty transfers when most of the corporate assets . . . were in the form of real estate. . . . Although *Health Group* was decided under the [L]ocal [T]ax [E]nabling [A]ct[, Act of December 31, 1965, P.L. 1257, No. 511, *as amended*, 53 P.S. §§6924.101-6924.901], it is still applicable here for the proposition that some stock transfers *must be recognized for the real estate transfers that they actually are. . . .*

*Equitable Life*, 621 A.2d at 1084-85 (emphasis added) (footnotes omitted). Although both *Health Group* and *Equitable Life* related to city real estate transfer taxes rather than real estate transfer taxes imposed under the Tax Code, this Court's reasoning in those cases applies equally

11

here, *i.e.*, a transfer of a real estate company constitutes a transfer of the interest in property held by that real estate company for transfer tax purposes.

Based on our analysis of Sections 1101-C, 1102-C, and 1102-C.3(9.1) of the Tax Code, and also consistent with *Health Group* and *Equitable Life*, we conclude that a transfer of a real estate company is the equivalent of a transfer of the real estate company's interest in the real estate it owns for purposes of the real estate transfer tax under the Tax Code. That being the case, a provision that the transfer of real property is *not* subject to taxation applies equally to the transfer of a real estate company in the absence of any indication of a contrary legislative intent. Accordingly, we agree with Stump LLP that the Revocable Trust's transfer of its 98% interest in Stump LLP to the Marital Trust after Settlor's death was not subject to the real estate transfer tax, as a transfer from the trustee of a living trust after the death of the settlor, pursuant to Section 1102-C.3(9.1) of the Tax Code, 72 P.S. § 8102-C.3(9.1).

Panel Dec., 319 A.3d at 630-32.

Upon *en banc* review, we agree with Stump LLP that the panel properly relied on the plain language of the statute and correctly found that no realty transfer tax should be assessed because the transfer from the Revocable Trust to the Marital Trust constituted a transfer from the trustee of a living trust to a beneficiary of that trust. As such, it is specifically excluded from taxation pursuant to Section 1102-C.3(9.1). Because we discern no error in the panel's reasoning, we overrule the Commonwealth's first exception.

### B. F&R Regulation Applying the Tax Code

In its second exception to the panel's decision, the Commonwealth asserts a related argument that the panel erred in applying the exemption in F&R's regulations, 61 Pa. Code §§ 91.193(b)(34) and 91.156(f), because that exemption

12

applies only to transfers of title and not transfers of ownership interests in real estate companies. The Commonwealth reiterates its position that the legislature, in enacting Section 1102-C.3(9.1) of the Tax Code, intended to limit its application to direct transfers of real estate because that section was meant to close a tax loophole regarding indirect transfers.

The Commonwealth further protests that the panel's decision gives a real estate company "two levels," *i.e.*, more than one way, to be exempted from transfer tax. The Commonwealth maintains that this is incorrect because Section 1103-C.3(20), which exempts "[a] transfer between members of the same family of an ownership interest in a real estate company or family farm business that owns real estate," is the only exemption that expressly applies to transfers of ownership interests in a real estate company. 72 P.S. § 8102-C.3(20). It is for this reason, the Commonwealth contends, that the applicable F&R regulation provides that the list of tax exemptions in 61 Pa. Code § 91.193(b) "has no application to acquisitions of real estate companies as provided in [61 Pa. Code] § 91.202 (relating to acquired real estate company)." 61 Pa. Code § 91.193(c). The Commonwealth also observes that the statutory exemption for transfers of interests in real estate companies provides a specific definition of "members of the same family" that is broader than the exemptions for transfers between family members for direct transfers of real estate. The Commonwealth reasons that this shows the legislature did not intend the exemption of direct transfers between family members to be available for transfers of interests in real estate companies.

Stump LLP takes issue with the Commonwealth's argument concerning legislative intent. Stump LLP asserts that F&R's regulation at 61 Pa. Code § 91.193(c) conflicts with the plain statutory language.

13

Stump LLP also opposes the Commonwealth's argument that the panel erred because its holding would improperly provide a real estate company with more than one means of exemption from transfer tax. As Stump LLP cogently states,

> it is not unusual for more than one tax exemption to apply to a particular transaction. Indeed, more than one exemption could apply to a transfer of real estate company interest using the rules the [Commonwealth] cites – for example, a partial transfer to a family member would be "exempt" for two reasons. If multiple exclusions or exemptions apply, the end result is that the transfer is exempt. A tax statute may grant one or two or ten exemptions[;] it is not for [F&R] to place an artificial cap on the exemptions or exclusions applicable to any situation, where no such restriction is evidenced in the plain language of the statute. Qualifying for multiple tax exemptions leaves a taxpayer in the same position as the taxpayer who qualifies for one exemption: both are equally free from tax.

Stump LLP's Br. at 18.

Stump LLP does not dispute the Commonwealth's assertion that the legislature intended to close several tax loopholes by revising the exemptions from transfer tax. However, Stump LLP insists the tax exemption at issue here was never considered a "loophole." Stump LLP's Br. at 20. Stump LLP contends the Commonwealth's interpretation "would . . . impose a new tax on transfers to heirs at the death of the owner of the real estate company, whether by testate or intestate succession (Section 8102-C.3.( 7)) or via revocable trusts (Section 8102-C.3(9.1))." *Id.* Moreover, "transfers from trustees to successor trustees ( Section 8102-C.3(10)) and transfers from trustees to named beneficiaries (Section 8102- C.3(9)) – which were never previously considered tax loopholes – would become taxable." Stump LLP's Br. at 20. As Stump LLP observes, "[t]he consequence of the Court accepting [the Commonwealth's] strained reasoning is that the widow who receives real estate

14

from her deceased husband is not taxed, but the widow who receives from her deceased husband a company that holds the same real estate *is* taxed. Such interpretation is unreasonable and not supported by the Tax [] Code." *Id.*

The panel concluded that the transfer of interest in the real estate company at issue facially met the statutory requirements for exclusion from realty transfer tax pursuant to the statute. Therefore, to the extent that the application of 61 Pa. Code § 91.193(c) would produce a different result, that regulation conflicts with F&R's enabling statute, the Tax Code, and must be disregarded. The panel reasoned:

> Section 91.193(b) of [F&R]'s regulations promulgated in relation to the Tax Code lists a number of transactions that are not subject to real estate transfer tax, including, consistent with the Tax Code, a "[t]ransfer[] from the trustee of a testamentary trust or living trust after the death of the settlor . . . ." 61 Pa. Code § 91.193(b)(34). However, Section 91.193(c) purports to limit the effect of that provision by stating that "Subsection (b) has no application to acquisitions of real estate companies as provided in [Section] 91.202 (relating to acquired real estate company)."[7] 61 Pa. Code § 91.193(c). Stump LLP asserts that this limitation conflicts with the Tax Code and is, therefore, invalid as applied here. We agree.
>
> We recognize that [F&R]'s regulations generally have the force of law. *Canteen Corp. v. Commonwealth*, 818 A.2d 594, 599 (Pa. Cmwlth. 2003), *aff'd per curiam*, 854 A.2d 440 (Pa. 2004) (citing *Teledyne Columbia-Summerill Carnegie v. Unemployment Comp. Bd. of Rev.*, 634 A.2d 665, 668 (Pa. Cmwlth. 1993)). However, where a regulation is not consistent with the statute under which it is promulgated, the regulation is not lawfully applied.

---

[7] Section 91.202 of the regulations, consistent with the Tax Code, provides that "[a] real estate company becomes acquired upon a change in the ownership of the company, if the change in the ownership interest . . . has the effect of transferring, directly or indirectly, 90% or more of the total capital and profits ownership interest in the company." 61 Pa. Code § 91.202(a)(2).

15

> *Canteen Corp.*, 818 A.2d at 599-600 (citing *Rump v. Aetna Cas. and Sur. Co.*, 710 A.2d 1093, 1098 (Pa. 1998) (holding that interpretation of a statute is a question of law for the court and when the court determines that an interpretive regulation is clearly erroneous or violates legislative intent, the court will disregard the regulation)).
>
> Here, [F&R]'s application of Section 91.193(c) conflicts with this Court's interpretation of the Tax Code in Section A above. Under this Court's analysis in Section A above, transfers of real estate companies constitute transfers of the interests in real property held by such companies for transfer tax purposes. As further explained above, we have also concluded that the Tax Code's provision that the transfer of real property is not subject to taxation applies equally to the transfer of a real estate company. Accordingly, the Department's application of Section 91.193(c) in a manner not consistent with that conclusion is improper and will be disregarded.

Panel Dec., 319 A.3d at 632.

We conclude that the panel correctly found a conflict between the statute and the regulation at issue, such that the regulation cannot be applied. Further, Stump LLP is correct in observing that there is no reason why a transfer cannot be subject to more than one possible statutory transfer tax exemption. No matter how many exemptions may potentially apply, the result is still the same: exemption from tax. Stated otherwise, exemption means zero tax is owed; the availability of multiple exemptions cannot reduce the tax to less than zero. For these reasons, we overrule the Commonwealth's second exception.

## C. Uniformity

In its third exception, the Commonwealth asserts that it may properly treat holders of indirect interests in real estate as a different class from holders of direct interests, for transfer tax purposes. The Commonwealth insists such a

distinction is permissible under the Pennsylvania Constitution's Uniformity Clause, which requires that "[a]ll taxes shall be uniform, upon the same class of subjects . . . ." Pa. Const. art. VIII, § 1. The Commonwealth asserts that uniformity principles do not apply to real estate transfer taxes on direct and indirect transfers because there are legitimate reasons for distinguishing between the two for tax purposes. These legitimate distinctions include not requiring transfer tax every time a small interest in a real estate company is transferred, as well as not requiring a deed for a transfer of interest in a real estate company because title to the real estate remains in the company and recorders should not have to deal with declarations of acquisition every time a small interest in a real estate company is transferred.

In response, Stump LLP characterizes the Commonwealth's argument as an attempt to distract this Court "from the [p]anel's logical conclusion that the transaction at issue meets the exclusion from realty transfer tax provided by the plain language of the statute." Stump LLP's Br. at 21. Stump LLP also observes that the Commonwealth "did not appeal based on constitutional grounds[;] these issues were not addressed below and were not argued before the panel." *Id.*

We agree with Stump LLP that uniformity issues were not raised before the panel and, therefore, were not addressed in the panel's opinion. Because the Commonwealth did not raise constitutional uniformity issues before the panel, they are waived. *See Mandler v. Commonwealth of Pa.*, 247 A.3d 104, 111 & n.24 (Pa. Cmwlth.), *aff'd per curiam*, 263 A.3d 551 (Pa. 2021) (Table) (finding waiver of claims not asserted in a petition to this Court for panel review of an F&R decision). Accordingly, we overrule the Commonwealth's third exception to the panel's decision.

17

## D. Conflict Between a Regulation and the Tax Code

In its fourth argument, the Commonwealth contends that the panel erred in holding that F&R's regulation at 61 Pa. Code § 91.193(c) conflicts with Sections 1101-C, 1102-C, and 1102-C.3(9.1) of the Tax Code. The Commonwealth insists the legislature's definition of a real estate company, in Section 1102-C.5(a) of the Tax Code, as an acquired company upon any transfer of interest, "however effected," was meant to result in imposition of transfer taxes on all transfers of interest in real estate companies as well as direct transfers of title. 72 P.S. § 8102-C.5(a). Therefore, the Commonwealth reasons, the regulation stating that enumerated exemptions do not apply to indirect transfers is consistent with the legislative intent.

In response, Stump LLP refers to and reiterates its response to the Commonwealth's second exception. Similarly, the panel found that the transfer of interest in the real estate company at issue facially met the statutory requirements for exclusion from realty transfer tax pursuant to the statute. Therefore, the panel concluded that, as quoted above, to the extent that the application of 61 Pa. Code § 91.193(c) would produce a different result, that regulation conflicts with F&R's enabling statute and must be disregarded.

On review, we likewise incorporate our analysis of the Commonwealth's second exception, and we overrule its fourth exception for the same reasons as for the second exception.

In addition, the Commonwealth's argument that the transfer tax applies to any transfer, however effected, rests on the assumption that a transfer of interest in a real estate company is the same as a transfer of real estate. This argument runs contrary to the Commonwealth's own assertion in its third exception, discussed above, that exemptions applicable to transfers of real estate should not apply to

18

transfers of real estate companies because, in a transfer of interest in a real estate company, *title to the real estate remains in the company*. We overrule the Commonwealth's fourth exception for this additional reason.

**E. Effect of the Panel's Decision on the 90% Rule**

In its final exception, the Commonwealth argues that the panel's decision would render unconstitutional Section 1102-C.5(a)(2) of the Tax Code, which limits the imposition of transfer tax on transfers of interests in real estate companies to those instances where 90% or more of the interest in a company is transferred within three years. *See* 72 P.S. § 8102-C.5(a)(2). The Commonwealth reasons that, under the panel's construction of Section 1102-C.5(a)(2), the legislature will have created two separate tax classes for direct and indirect transfers and that, therefore, they are not subject to the same exemptions. The Commonwealth posits that, as construed by the panel, the statute would be unconstitutional as a violation of the uniformity clause because a direct transfer of any percentage interest in real estate is subject to transfer tax, but there is no transfer tax on transfers of interest in a real estate company unless those transfers total 90% or more of the company within a three-year period. *See id.*

In response, Stump LLP asserts that, like the Commonwealth's third exception, this constitutional argument is merely a distraction and is waived because it was not raised previously. We agree. The panel did not address this issue, as it was not raised. As Stump LLP correctly observes, the Commonwealth did not raise constitutional issues before the panel. Notably, the question of whether a direct transfer of real property and a transfer of interest in a real estate company are equivalent for transfer tax purposes was directly at issue before the panel; it did not

19

first arise because of the panel's opinion. If the Commonwealth believed such equivalence would violate constitutional uniformity principles, it needed to raise that argument before the panel. Therefore, the Commonwealth cannot reasonably argue that it did not need to raise its constitutional argument earlier. Having failed to raise the issue, the Commonwealth has waived it. *See Mandler*, 247 A.3d at 111 & n.24.

## IV. Conclusion

Based on the foregoing discussion, we overrule the Commonwealth's exceptions to the panel's decision and direct the entry of final judgment in favor of Stump LLP.

_____
CHRISTINE FIZZANO CANNON, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

430 Stump Road, LLP,                            :
                        Petitioner              :
                                                :
            v.                                  :
                                                :
Commonwealth of Pennsylvania,                   :     No. 502 F.R. 2022
                        Respondent              :

## **O R D E R**

AND NOW, this 15th day of May, 2025, the exceptions of Respondent, the Commonwealth of Pennsylvania, to this Court's panel decision, dated July 3, 2024, are OVERRULED. The Prothonotary is directed to enter final judgment in favor of Petitioner, 430 Stump Road, LLP.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

430 Stump Road, LLP,        :
                Petitioner      :
                                 :
             v.                  :    No.  502 F.R. 2022
                                 :    Submitted:  March 5, 2025
Commonwealth of Pennsylvania,     :
                Respondent    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED:  May 15, 2025

Respectfully, I disagree with the Majority's decision to overrule the Commonwealth of Pennsylvania's Exceptions to this Court's July 3, 2024 Order and Opinion reversing an order of the Board of Finance and Revenue that imposed a realty transfer tax on the transfer of an interest in a real estate company, 430 Stump Road, LLP (Stump LLP).  The Majority concludes that the transfer of the Allen L. Kanter Revocable Trust's 98% interest in Stump LLP to the Allen L. Kanter Marital Trust FBO Valentina Kanter following the death of Allen Kanter facially met the requirements of Section 1102-C.3(9.1) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 8102-C.3(9.1),[1] and, therefore,

---

[1] Section 1102-C.3 of the Tax Code was added by the Act of July 2, 1986, P.L. 318.

the transfer was excluded from the realty transfer tax. However, respectfully, in reaching its conclusion, the Majority did not give any deference to the Department of Revenue's (Department) duly promulgated regulations, which interpret the relevant provisions of the Tax Code and which, I believe, are consistent with the Tax Code and not clearly erroneous. *See Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 613 (Pa. 1993) (stating that the "'Department['s r]egulations interpreting the Tax . . . Code will not be disregarded by [a reviewing] court unless clearly inconsistent with the [Tax C]ode'") (citation omitted); *Kegerreis Outdoor Advert. Co. v. Dep't of Transp.*, 157 A.3d 1033, 1039 (Pa. Cmwlth. 2017) ("[T]he agency's interpretation of its statute may not be disregarded by this Court unless it is clearly erroneous or is inconsistent with the intent or purpose of the statute."); *Shawnee Dev., Inc. v. Com.*, 799 A.2d 882, 889 (Pa. Cmwlth. 2002) ("[T]he Supreme Court [has] stated that regulations enforcing the Tax . . . Code will not be disregarded unless clearly inconsistent with the [Tax] Code and that a taxpayer has a heavy burden of establishing that the regulations are clearly erroneous."), *aff'd*, 819 A.2d 528 (Pa. 2003). Instead, the Majority begins its analysis with its own interpretation of Section 1102-C.3(9.1) of the Tax Code, without first examining the Department's regulations to determine if they are clearly erroneous or inconsistent with the statute. Then, following what I believe is a misinterpretation of Section 1102-C.3(9.1), the Majority disregards the regulations because it interprets the language of Section 1102-C.3(9.1) differently than the Department. Because I believe the regulations are consistent with the Tax Code and not clearly erroneous, I would sustain the Commonwealth's exceptions.

Section 1107-C of the Tax Code, 72 P.S. § 8107-C,[2] authorizes the Department to promulgate regulations pertaining to the realty transfer tax. *See* 72 P.S. § 8107-C(3) ("The [D]epartment is hereby charged with the enforcement of the provisions of this article and is hereby authorized and empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to . . . [a]ny . . . matter . . . pertaining to the administration and enforcement of the provisions of this article."). Our Court has recognized that "agencies are entitled to deference in interpreting the statutes that they enforce and . . . **where a scheme is technically complex, such as the Tax . . . Code and its regulations, a reviewing court must put aside its discretion for [the] expertise of the administrative agency**." *Shawnee*, 799 A.2d at 889 (emphasis added); *see also Tool Sales*, 637 A.2d at 613 ("Where the statutory scheme is as technically complex as the Tax . . . Code, '**a reviewing court must be even more chary to substitute discretion for the expertise of the administrative agency**.'") (citation omitted) (emphasis added). Because the regulations interpreting Section 1102-C.3 of the Tax Code are duly promulgated regulations of the Department, we must give them appropriate weight and deference **unless** they are clearly erroneous or inconsistent with the statute. *See Kegerreis*, 157 A.3d at 1039; *see also Martin Media v. Dep't of Transp.*, 700 A.2d 563, 566 n.11 (Pa. Cmwlth. 1997) (stating that "the agency's interpretation of [its] regulation is controlling unless shown to be clearly erroneous").

Unlike the Majority, I do not believe the Department's regulations conflict with Section 1102-C.3 of the Tax Code. Section 1102-C.3 lists the transactions that are excluded from the realty transfer tax. Subsection (9.1) of that provision, on which the Majority relies, states: "The tax imposed by [S]ection 1102-C [of the Tax

---

[2] Section 8107-C of the Tax Code was added by the Act of May 5, 1981, P.L. 36.

Code, 72 P.S. § 8102-C,[3]] shall not be imposed upon . . . **[a] transfer** for no or nominal actual consideration from a trustee of a living trust after the death of the settlor of the trust . . . to a beneficiary to whom **the property** is devised or bequeathed." 72 P.S. § 8102-C.3(9.1) (emphasis added). The Majority finds that this provision clearly establishes that the transfer in this case is not subject to the realty transfer tax because it is a transfer from a trustee of a living trust after the death of the settlor of the trust to a beneficiary. However, the plain language of Section 1102-C.3(9.1) refers specifically to the transfer of "property," meaning real estate, **not** an ownership interest in a real estate company.[4] In fact, as the Commonwealth points out, Section 1102-C.3 contains only one exclusion, in subsection (20), that **explicitly** applies to the conveyance of an ownership interest in a real estate company. That provision exempts from the realty transfer tax "[a] transfer between members of the same family of **an ownership interest in a real estate company** or family farm business that owns real estate." 72 P.S. § 8102-C.3(20) (emphasis added). Importantly, this exclusion applies **only** to transfers of an interest in a real estate company to "members of the same family." *Id.* The Tax Code defines the phrase "members of the same family," and that definition **does not include a "trust."** *See* 72 P.S. § 8101-C (defining "members of the same family," in relevant part, as "[a]ny individual, such individual's brothers and sisters, the brothers and sisters of such individual's parents and grandparents, the ancestors and lineal descendants of any of the foregoing, a spouse of any of the foregoing and the estate of any of the foregoing"). Thus, the only exception in Section 1102-C.3

---

[3] Section 1102-C of the Tax Code was added by the Act of May 5, 1981, P.L. 36.

[4] The term "property" is not defined in the Tax Code, and the Tax Code's definition of "real estate" does not include ownership interest in a real estate company. *See* Section 1101-C of the Tax Code, added by the Act of May 5, 1981, P.L. 36, 72 P.S. § 8101-C.

specifically applicable to the transfer of an interest in a real estate company is inapplicable here.

Importantly, **none** of the other enumerated exceptions in Section 1102-C.3 addresses the transfer of an ownership interest in a real estate company. When the General Assembly intended to create an exception for the transfer of an interest in a real estate company, it expressly did so in subsection (20). In my view, the General Assembly's failure to reference "interest in a real estate company" in **any** of the 27 other enumerated exceptions – including the exception for a transfer from a trustee of a living trust after the death of the settlor to a beneficiary in subsection (9.1) – evidences its intent to treat that type of transfer differently for realty transfer tax purposes. Therefore, I respectfully disagree with the Majority's interpretation of Section 1102-C.3(9.1) of the Tax Code.

Turning to the Department's regulations, Section 91.193(b)(34) provides that "[t]ransfers from the trustee of a testamentary trust or living trust after the death of the settlor" are excluded from the realty transfer tax. 61 Pa. Code § 91.193(b)(34). However, subsection (c) of the same regulation expressly limits the application of that exclusion, as follows:

> Documents that convey or evidence the **transfer of real estate** between the parties involved in the transactions enumerated in subsection (b) are excluded from tax. **Subsection (b) has no application to acquisitions of real estate companies** as provided in [61 Pa. Code] § 91.202 (relating to acquired real estate company).[5]

---

[5] Section 91.202(a)(2) of the Department's regulations provides that "[a] real estate company becomes acquired upon a change in the ownership of the company, if the change in the ownership interest . . . has the effect of transferring, directly or indirectly, 90% or more of the total capital and profits ownership interest in the company." 61 Pa. Code § 91.202(a)(2).

*Id.* § 91.193(c) (emphasis added). In other words, the regulation unmistakably differentiates, for purposes of the realty transfer tax, between "transfer[s] of real estate" and "acquisitions of real estate companies." *Id.*

Section 91.156(f) of the Department's regulations further demonstrates that Section 1102-C.3(9.1)'s exclusion from the realty transfer tax applies only to transfers of title to real estate and **not** to transfers of ownership interests in real estate companies. That regulation states:

> A **transfer of real estate** from the trustee of a testamentary trust or a living trust after the death of its settlor is exempt from tax **only if** the transfer is made for no or nominal actual consideration and to the person who, under the governing instrument of the trust, has the vested remainder interest or **who is otherwise entitled to receive the real estate or the proceeds from the sale of the real estate** as a beneficiary under the terms of the trust.

61 Pa. Code § 91.156(f) (emphasis added). This regulation, **consistent with Section 1102-C.3(9.1)** of the Tax Code, refers only to the "transfer of real estate" and "proceeds from the sale of real estate," **not** transfer of an ownership interest in a real estate company.[6]

As previously explained, the exception in Section 1102-C.3(9.1) of the Tax Code specifically refers to the transfer of "property," not ownership interest in a real estate company. Only Section 1102-C.3(20) of the Tax Code references the transfer of an interest in a real estate company, but that provision is inapplicable because the transfer in this case was not between "members of the same family," as defined by

---

[6] In reaching its decision, the Majority also relies on *Equitable Life Assurance Society v. Murphy*, 621 A.2d 1078 (Pa. Cmwlth. 1992), and *Health Group Care Centers, Inc. v. City of Pittsburgh*, 552 A.2d 323 (Pa. Cmwlth. 1988). However, I believe those cases are inapposite. Both cases involved the application of the realty transfer tax provisions of local ordinances, not the provisions of the Tax Code at issue here, which are subject to the Department's duly promulgated interpretative regulations.

the statute. The regulation interpreting Section 1102-C.3(9.1) clarifies the distinction between the two types of transfers by stating, in clear terms, that the exclusion for "transfers of real estate" from the trustee of a testamentary trust or living trust after the death of the settlor "has **no application to acquisitions of real estate companies**." 61 Pa. Code § 91.193(c) (emphasis added). In my view, this regulation is neither inconsistent with the Tax Code nor clearly erroneous based on the statute's plain language. Therefore, I believe the Majority erred in disregarding the Department's regulation.

In summary, respectfully, the Majority's decision incorrectly equates a direct transfer of real estate with a transfer of an ownership interest in a real estate company for purposes of the realty transfer tax exceptions, in contravention of the plain language of Section 1102-C.3 of the Tax Code. However, in my view, the Tax Code can be read to distinguish between the two types of transfers, and Section 1102-C.3 does not exempt the specific type of transfer that occurred in this case.[7] The Department's regulations, which are consistent with the Tax Code, clarify that the exclusion for transfers of real estate from the trustee of a testamentary trust or living

---

[7] The Majority states:

> Section 1102-C of the Tax Code imposes the transfer tax upon the filing of a "document," and Section 1101-C expressly includes within the definition of a "document" *both* a writing that evidences a transfer of title to real estate *and* a declaration of acquisition relating to a real estate company. 72 P.S. §§ 8101-C & 8102-C. Had the legislature intended to differentiate between those two kinds of documents for purposes of the real estate transfer tax, it could have done so, but it did not. **Neither does the Tax Code make such a distinction in listing the transfers not subject to the real estate transfer tax.**

*430 Stump Road LLP v. Com.* (Pa. Cmwlth., No. 502 F.R. 2022, filed May 15, 2025) (*en banc*), slip op. at 10 (quoting prior panel decision) (italics in original; bold added). I disagree with that last sentence, because, as explained above, I believe Section 1102-C.3 of the Tax Code **does** make such a distinction in identifying the transactions that are excluded from the realty transfer tax.

trust after the death of the settlor **does not apply** to transfers of an interest in a real estate company. *See* 61 Pa. Code § 91.193(c). Under these circumstances, I believe we must defer to the Department's interpretation. *See Shawnee*, 799 A.2d at 889 ("[W]here a scheme is technically complex, such as the Tax . . . Code and its regulations, **a reviewing court must put aside its discretion for [the] expertise of the administrative agency**.") (emphasis added).

Accordingly, because I would sustain the Commonwealth's exceptions on this ground, I respectfully dissent.

_____
RENÉE COHN JUBELIRER, President Judge